1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**\*E-FILED 7/25/05\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JOSEPH PADGETT AND DARLA PADGETT,

                Plaintiffs,

    v.

CITY OF MONTE SERENO, ET AL.,

                Defendants.

_____/

NO. 5:04-cv-3946 JW (RS)

**ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTION TO
COMPEL PALM PRINTS
AND FINGER PRINTS**

## I.  INTRODUCTION

Plaintiffs Joseph Padgett and Darla Padgett ("Padgetts"), former residents of the City of Monte Sereno (the "City"), initiated this suit claiming, among other things, violation of their civil rights pursuant to 42 U.S.C. § 1983.  Specifically, the Padgetts allege that they were singled out for discriminatory treatment in the process of seeking a building permit for their home, and that City officials sent them a threatening letter demanding that they leave town.

The Padgetts now seek to compel City officials to submit fingerprints and palm prints, pursuant to Fed. R. Civ. P. 35, arguing that such evidence is necessary in order to identify the author of the threatening letter, and to determine whether City officials had knowledge or involvement in it.  The motion was fully briefed and heard by the Court on July 13, 2005.  Based on all papers filed to date, as well as on the oral argument of counsel, the Court grants in part and denies in part the motion, for the reasons set forth below.

## II.  BACKGROUND

In 1992, Mrs. Padgett purchased property located at 17965 Saratoga-Los Gatos Road in Monte Sereno.  In February 1999, the Padgetts applied for a Site Development Permit so that they could build their "dream home" on the property.  (Amended Complaint at p. 3, line 9.)  On March 3, 1999, the City approved the Padgetts' Site Development Permit and the Padgetts proceeded with construction.

Once construction commenced, the Padgetts' neighbors began to object to the changes to the Padgetts' property.  The Padgetts allege that City Manager, defendant Brian Loventhal ("Loventhal"), sided against them and entered into a common plan to "persecute and harass" them into conceding to their neighbors' demands. During construction, a dispute also developed between the City and the Padgetts concerning a newly constructed fence.  The City was unwilling to grant a variance, and insisted on enforcing an ordinance prohibiting fences over six feet tall.  (Id. at p. 8, line 12.)  The Padgetts refused to comply with the ordinance, and the City filed a nuisance action and a criminal suit against the Padgetts, obtaining criminal search warrants to enter the Padgetts' property.  (Id. at p. 14, lines 1-9.)

In January 2004, A. Curtis Wright, a City Council member, visited the house of Ron Schindler and allegedly warned Mr. Schindler about Mr. Padgett, suggesting he search the Internet for information about Mr. Padgett.  (Schindler Decl., p. 3, line 1.)  Several months later, after subsequent communication with Mr. Wright, Mr. Schindler allegedly received a copy of a newspaper article about Mr. Padgett dated February 3, 1994 in his mailbox.  (Id. at line 20; see Exh. C.)

In March 2004, the Padgetts attended a City Council meeting to complain that defendant Loventhal was singling them out for discriminatory treatment.  (Id. at line 18.)  A few days after the meeting, on March 19, 2004, the Padgetts received a threatening letter demanding that they leave town or else Mr. Padgett's ten-year old misdemeanor conviction would be exposed.  (Padgett Decl., Exh. B.)  An article from the San Jose Mercury News discussing that conviction dated February 3, 1994 was included with the letter, the same article allegedly placed in Ron Schindler's mailbox.  (See id.; see Schindler Decl., Exh. C.)

Mr. Padgett reported receiving the threatening letter to the Los Gatos/Monte Sereno Police Department.  (Padgett Decl., p. 4, line 6.)  The letter and envelope were then submitted to the County of Santa Clara Crime Laboratory and the San Jose Police Department Central Identification Unit for analysis.  The

2

1    County Crime Lab processed the letter and envelope and prepared a compact disc with 47 images lifted from

2    the documents.  (Reedy Decl., Exh. A, p. 2.)  Based on the report from the Central Identification Unit, the Los

3    Gatos/Monte Sereno Police Department announced that the analysis did not match Mr. Loventhal's prints.

4    (Reedy Supp. Decl., Exh. C, p. 2.)

5           Unconvinced by the police report, the Padgetts submitted the letter along with the CD from the County

6    Crime Lab to a private laboratory, Forensics Analytical.  (Kaminski Decl., p. 2, lines 15-19.)   They also

7    submitted a water bottle that allegedly was used by Mr. Loventhal as well as a set of original letters and

8    envelopes from him, including a letter dated January 30, 2004.  (Id. at p. 2; see Padgett Decl., Exh. C.)

9    Forensic Analytical concluded that the prints found on the threatening letter matched a print found on the letter

10   from Loventhal, but the Padgetts were eliminated as a source of the prints.  (Kaminski Decl., Exh. B, p. 3.)

11   Despite repeated requests by the Padgetts, defendants refused to provide finger or palm prints voluntarily.

12   (Reedy Decl., Exh. G, H.)  Forensic Analytical was not able to find a match between the threatening letter and

13   the water bottle allegedly used by Mr. Loventhal.  (Kaminski Decl., Exh. B, p. 3.)

14          In addition to seeking forensic evidence, the Padgetts also attempted to determine the source of the

15   Padgett article.  Discovering the archives for the San Jose Mercury News were controlled by News Bank, Inc.,

16   the Padgetts were able to determine that Mr. Loventhal had downloaded the Padgett article twice in 2003.

17   (Padgett Decl., Exh. F.)  In its September 5, 2004 edition, the San Jose Mercury News reported that Mr.

18   Loventhal admitted to passing copies of the Padgett article to City Council members.  (Reedy Decl., Exh. J,

19   p. 2.)

20          The Padgetts contend that defendants Brian Loventhal, A. Curtis Wright, Erin Brodsky, Barbara

21   Nesbet and David Baxter, as well as non-parties Howard Bell, Rosemary Carrera, Andrea Chelemengos, Lisa

22   Rice, Eileen Finn-Kopp, Sue L'Heureux, Gordon Siebert, and Michelle Wu should be compelled to provide

23   fingerprints because their request meets the requirements of Fed. R. Civ. P. 35.[1]  The Padgetts contend that

24

25          [1]Brian Loventhal is the City Manager.  A. Curtis Wright, Erin Brodsky, Barbara Nesbet and David Baxter are
     members of the City Council.  Howard Bell is the City's Building Official.  Rosemary Carrera is the City's Postal Clerk.  Andrea
26   Chelemengos is the City Clerk and Assistant City Planner.  Eileen Finn-Kopp is an administrative clerk.  Sue L'Heureux is the
     City's Finance Officer/Deputy City Clerk.  Lisa Rice was, until recently, an administrative clerk.  Gordon Siebert and Michelle
27   Wu are contract engineers for the City.  (Loventhal Decl., p. 3, line 23.)

28                                                        3

the threatening letter's authorship is a central matter "in controversy" and that "good cause" exists to compel

defendants to provide their fingerprints.  In response, defendants contend that a recent admission by non-party

Lisa Rice that she authored and sent the letter with the accompanying article precludes the Padgetts from

meeting the "in controversy" and "good cause" requirements of Rule 35.  In addition, defendants contend that

the Court may not compel non-parties to submit to physical examinations under Rule 35.

### III.  STANDARDS

Discovery requests for physical or mental examinations are governed by Rule 35 of the Federal Rules

of Civil Procedure.  The Rule in relevant part states that,

> when the mental or physical condition (including the blood group) of a party or a person in the custody or under the legal control of a party, is in controversy, the court may . . . order a party to submit to a physical or mental examination by a suitably licenced or certified examiner or to produce for examination the person in the party's custody or legal control.  The order may be made only on motion for good cause shown.

Fed. R. Civ. P. 35(a).

Rule 35 requires the trial judge to analyze with particularity whether the moving party has adequately

met the Rule's requirements of "in controversy" and "good cause."  Schlagenhauf v. Holder, 379 U.S. 104,

118-119 (1964).  Discovery requests for documents and tangible things are governed by Rule 34 of the

Federal Rules of Civil Procedure.  The rule in relevant part states that,

> Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served.

Fed. R. Civ. P. 34(a).

Further, Rule 34(c) provides that a court may compel "a person not a party to the action . . . to produce

documents and things or to submit to an inspection as provided in Rule 45."

### IV.  DISCUSSION

A.    Named Defendants Are to Submit Fingerprints and Palm Prints Pursuant to Rule 35

1.    Defendants' Fingerprints Are "In Controversy"

Rule 35(a) requires that the "mental or physical condition of a party or a person in the custody or under

4

1   the legal control of a party . . . [be] in controversy . . . [before] the court may . . . order a party to submit to

2   a physical or mental examination." Fed. R. Civ. P. 35(a).  The "in controversy" requirement stipulates that the

3   examination must be closely related to the specific incident or litigation.  See Robinson v. Jacksonville

4   Shipyards, Inc., 118 F.R.D. 525, 531 (M.D. Fla. 1988).

5          As plaintiffs have analyzed the threatening letter for fingerprints and palm prints, all that remains is to

6   compare those with defendants' fingerprints and palm prints.  Without additional fingerprints and palm prints,

7   authorship of the letter may not be conclusively determined.  That issue directly relates to at least one of the

8   Padgetts' claims for relief.  Hence, the "in controversy" requirement is met in this instance.

9          That conclusion corresponds to the decision in Harris v. Athol-Royalston Regional School District

10  Committee, 206 F.R.D. 31, 33 (D. Mass. 2002).  In Harris, plaintiff alleged that his employers had delivered

11  an anonymous packet of sensitive documents to a columnist of the local newspaper.  Id. at 31.  Attempting to

12  link his employer and several coworkers with the delivery, plaintiff sought to compel defendants to produce

13  fingerprints.  Id. at 32.  In partially granting the motion, the court in Harris found that the request for fingerprints

14  adequately satisfied the "in controversy" requirement because the discovery sought was directly linked to the

15  claim for relief.  See id. at 33.

16         Although defendants contend that the admission by Lisa Rice renders the authorship of the threatening

17  letter no longer a matter "in controversy," her alleged statements do not end the inquiry, and the Padgetts should

18  be entitled to explore the origin and handling of the latter more fully in discovery.  After all, the Padgetts have

19  advanced evidence that links the threatening letter to Mr. Loventhal and members of the City Council, indicating

20  the existence of a material issue of fact concerning authorship of the threatening letter despite the statements

21  ascribed to Ms. Rice.  For these reasons, the Court finds that defendants' fingerprints and palm prints remain

22  "in controversy" within the meaning of Rule 35.

23         2.    "Good Cause" Exists To Compel Discovery From Defendants

24         Rule 35 requires that the moving party show "good cause" for their request for physical examination.

25  Fed. R. Civ. P. 35(a).  The explicit requirement of "good cause" indicates that a greater showing of need is

26  required beyond mere relevancy.  "The specific requirement of good cause would be meaningless if good cause

27  could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy

28

1    standard has already been imposed by Rule 26(b)."  Schlagenhauf, 379 U.S. at 118 (quoting Guilford Nat.

2    Bank of Greensboro v. Southern Ry. Co., 297 F.2d 921, 924 (4th Cir. 1962)).  This burden is not met by

3    "mere conclusory allegations of the pleadings - nor by mere relevance to the case - but require[s] an affirmative

4    showing by the movant that . . . good cause exists for ordering each particular examination."  Id.

5         With respect to defendant Loventhal, the Padgetts have satisfied their burden of showing "good cause"

6    to request the production of fingerprints and palm prints.  Based on the analysis by Forensic Analytical, it is "at

7    least plausible" that whoever wrote the threatening letter may have been the same person who signed the earlier

8    letter from defendant Loventhal submitted to forensic experts.  Harris, at 206 F.R.D. at 33.  The Padgetts have

9    also provided further evidence that the Padgett article originated as a download from defendant Loventhal's

10   computer.  See Padgett Decl., Exh. F.  Additionally, the Padgetts have argued that they cannot definitively

11   determine the identity of the author of the threatening letter without fingerprint information.  The inability of the

12   movant to obtain the desired information by other means is also relevant to a showing of good cause.  See

13   Schlagenhauf, 379 U.S. at 114.

14        With respect to the fingerprint requests for the remaining defendants, the Padgetts have similarly

15   satisfied their burden of showing "good cause," by providing evidence that members of the City Council

16   received copies of the newspaper article from Loventhal.  See Reedy Decl., Exh. J, p. 2.  In addition, the

17   Padgetts have provided evidence that members of the City Council were openly hostile towards them, and

18   were willing to share the article about Mr. Padgetts' conviction in order to hurt his reputation.  Schindler Decl.,

19   p. 3, line 20.  In light of the Padgetts' evidence, it is "at least plausible" that the author of threatening letter may

20   have been a member of the City Council.  Hence, although the Padgetts' showing of good cause may not be

21   as strong for the City Council members as it is for defendant Loventhal, the Padgetts have made a reasonable

22   showing consistent with the standard set forth in Schlagenhauf.  379 U.S. at 118.  Therefore, the Padgetts'

23   motion to compel is granted with respect to the named defendants.

24   B.   Non-Parties Will Not Be Compelled To Submit Fingerprints And Palm Prints

25        1.   Non-Parties May Be Compelled To Submit Fingerprints Under Rule 34

26        Traditionally under Rule 35, physical examinations may only be requested of parties to the litigation or

27   persons in the parties' "custody or legal control."  Fed. R. Civ. P. 35(a).  That language was drafted to extend

28

1  Rule 35 to minors whose guardians are parties to an action.  See Committee Notes on Amendments to Federal

2  Rules of Civil Procedure (1970); Lewis v. Herrman's Excavating, Inc., 200 F.R.D. 657, 661 (D. Kan. 2001).

3  The Committee Notes also make it clear that "custody or legal control" was not intended to encompass

4  employees of a corporation or governmental entity who may be party to an action.  ("[t]he amendment makes

5  no reference to employees of a party.  Provisions relating to employees in the State statutes and rules . . .

6  appear to have been virtually unused." Id.)  Subsequent proposals to expand the scope of Rule 35 to include

7  employees of corporations have thus far been rejected.  Lewis, 200 F.R.D. at 661 (citations omitted).  Hence,

8  Rule 35 provides no authority to compel any of the non-parties in this action to submit to physical examinations

9  under Rule 35, regardless of their employment status with the City.[2]

10      While Rule 35 is therefore not available to compel non-parties in this instance, the Padgetts argue that

11  Rule 34 provides an alternative basis for such a motion.  In U.S. v. Euge, 444 U.S. 707, 711 (1980), the

12  Supreme Court held that "the duty to appear and give testimony . . . has traditionally encompassed a duty to

13  provide some forms of non-testimonial, physical evidence." Id. at 711; Holt v. U.S., 218 U.S. 245, 252

14  (1910).  "Traditionally witnesses could be compelled . . . to submit to 'fingerprinting, photographing, or

15  measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk,

16  or to make a particular gesture.'" Id. at 713 (quoting Schmerber v. California, 384 U.S. 757, 764 (1966))

17  In Gilbert v. California, 388 U.S. 263, 266 (1967), the Court held that handwriting was "like the body itself"

18  to be an "identifying physical characteristic," subject to production.  See U.S. v. Dionisio, 410 U.S. 1, 93

19  (1973) (confirmed that handwriting is in the nature of physical evidence which can be compelled by a grand

20  jury).

21      When faced with similar facts to this case, the court in Harris applied the reasoning in Euge and

22  concluded that fingerprints were also an "identifying physical characteristic" and fell within the scope of Rule

23  34.  The court in Harris relied heavily on Alford v. Northeast Insurance Co., Inc., 102 F.R.D. 99, 101 (N.D.

24  Fla. 1984), which stated that "the taking and furnishing of fingerprints is a matter within the contemplation of

25

26      [2]The Padgetts contend that the City, as an employer, has "legal control" over the non-party City officials.  With
respect to Lisa Rice, however, her employment with the City has been terminated since the submission of her alleged
admission.  Hence, even if the Padgetts' interpretation of Rule 35 was correct, Ms. Rice's fingerprints would still be
27  unavailable since she is no longer a city employee.

28                                            7

Rule 34." Like the Alford court, Harris concluded that fingerprints are physical characteristics, essentially like a "blood group" and, therefore, could be subject to production. 206 F.R.D. at 33 (citing Alford, 102 F.R.D. at 101).

The language of Rules 26 and 34 is sufficiently broad to encompass the obligation to provide fingerprints and palm prints. As with requests for handwriting exemplars under Rule 34, requests for fingerprints ask for "identifying physical characteristics" that may be useful as a form of "noncommunicative evidence." Alford, 102 F.R.D. at 101. While Rule 34 is accordingly available as a discovery mechanism to compel the production of fingerprints, the standard a moving party must meet by necessity mirrors the "good cause" requirement in Rule 35. To hold otherwise would produce the anamalous result of a lesser showing being required to compel non-party fingerprints than those of a party. Rule 35's "good cause" requirement, therefore, applies with respect to the Padgetts' motion to compel discovery from non-parties.[3] See Harris, 206 F.R.D. at 33.

### 3. With The Exception Of Lisa Rice, "Good Cause" Does Not Exist To Compel Discovery From Any Non-Parties

The Padgetts' showing of good cause rests primarily on the deposition of Ms. Chelemengos, who admitted that Mr. Loventhal had shown her the Padgett article. However, the Court notes that while Ms. Chelemengos did admit that she saw the Padgett article, she also stated that she directly handed the Padgett article back to Mr. Loventhal after reading it. See Reedy Decl., p. 137. Unlike the City Council members, Ms. Chelemengos never received her own copy of the Padgett article. Id. at Exh. J, p. 2. Moreover, beyond Ms. Chelemengos' deposition, the Padgetts submit only unsupported allegations with their request that non-parties be required to provide fingerprints and palm prints. Thus, absent more convincing evidence, the Court does not find that the Padgetts at this juncture have made a reasonable showing of "good cause" with respect to the non-party City officials, with the exception of Ms. Rice.

---

[3]The Padgetts also contend that the Court may use its inherent power to compel non-parties to submit to physical examinations. The Padgetts contend Dinsel v. Pennsylvania R.R. Co., 144 F. Supp. 880, 882 (W.D. Pa. 1956) provides precedent for the Court to compel a non-party employee to a physical examination. However, the Court does not find Dinsel persuasive. Dinsel was decided prior to the 1970 amendments, when the language "legal custody and control" was added to Rule 35(a). As explained above, the 1970 Advisory Committee Notes make it clear that employees of a defendant corporation were not within the contemplation of the drafters of the 1970 amendment. Hence, the Court believes that the 1970 amendments were written to prevent future decisions like Dinsel, and thus, it is not instructive in this case.

8

1    In light of Lisa Rice's admissions regarding the letter at issue, "good cause" exists to compel her to

2    produce fingerprints and palm prints.  Under Rule 34(c), a party must proceed by way of a Rule 45 subpoena

3    to obtain evidence from a non-party.  Since there is no record that the Padgetts served a Rule 45 subpoena

4    on Ms. Rice, their request to compel fingerprints and palm prints from Ms. Rice is premature.  Accordingly,

5    the motion is denied without prejudice as to Ms. Rice.

6                                              V.  CONCLUSION

7        For the reasons stated, the Court grants in part and denies in part the Padgetts' motion to compel

8    fingerprints and palm prints.  The Court grants the motion with respect to defendants Brian Loventhal, A. Curtis

9    Wright, Erin Brodsky, Barbara Nesbet and David Baxter and denies the motion with respect to non-parties

10   Howard Bell, Rosemary Carrera, Andrea Chelemengos, Eileen Finn-Kopp, Sue L'Heureux, Gordon Siebert,

11   and Michelle Wu.  With respect to Lisa Rice, the motion is denied as premature in that no Rule 45 subpoena

12   has been served.

13       The fingerprints and palm prints shall be administered by Laurie Kaminski of Forensics Analytical at

14   the Monte Sereno City Hall within thirty (30) days of the date of this order.  Subsequently, the Padgetts are

15   to provide defendants with the records of the original prints taken at that time.

16   IT IS SO ORDERED.

17
     Dated: July 25, 2005                              /s/ Richard Seeborg
18                                                   RICHARD SEEBORG
19                                                   United States Magistrate Judge

20

21

22

23

24

25

26

27

28                                              9

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN DELIVERED TO:**

Joseph C. Howard , Jr    jhoward@hrmrlaw.com, tmaster@hrmrlaw.com;dlongstaff@hrmrlaw.com

James McManis    jmcmanis@mfmlaw.com, smaes@mfmlaw.com

Michael Reedy    mreedy@mfmlaw.com, smaes@mfmlaw.com

Jessica Valenzuela Santamaria    jvalenzuelasantamaria@mfmlaw.com, smaes@mfmlaw.com

**Dated: July 25, 2005**                          **Chambers of Judge Richard Seeborg**

                                   **By:      /s/ BAK                    **