*E-FILED 12/21/05*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH PADGETT AND DARLA PADGETT,<br><br>         Plaintiffs,<br>   v.<br><br>CITY OF MONTE SERENO, ET AL.,<br><br>         Defendants. | NO. 5:04-cv-3946 JW (RS)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER** |

## I. INTRODUCTION

Defendants the City of Monte Sereno ("City") and other individual City officials[1] move for a protective order to compel plaintiffs Joseph Padgett and Darla Padgett ("Padgetts"), former residents of the City, to return any and all copies of a handwritten note which the City contends is protected by the attorney-client privilege and was inadvertently produced to the Padgetts during the course of discovery. The City also requests that the Court strike any copies of the note which are on file in this action and order that page 226 of Exhibit 3 to the November 1, 2005 deposition of Scott Seaman be removed from the deposition transcript. The motion was fully briefed and heard by the Court on December 21, 2005. Based on all papers filed to date, as well as on the oral argument of counsel, the Court denies the motion for a

---

[1] The current and former City officials named as defendants are: Brian Loventhal ("Loventhal"), Erin Garner ("Garner"), A. Curtis Wright ("Wright"), Mark Brodsky ("Brodsky"), Barbara Nesbet ("Nesbet"), and David Baxter ("Baxter").

protective order, finding that the City waived the privilege by failing to move for relief six months ago when the note was initially produced, or for several months thereafter during which the note was in circulation to the Court and all parties.

## II.  BACKGROUND

The Padgetts initiated this suit claiming, among other things, violation of their civil rights pursuant to 42 U.S.C. § 1983.  The suit is essentially based upon allegations that the Padgetts were singled out for discriminatory treatment in the process of seeking a building permit for their home, and that City officials sent them a threatening letter demanding that they leave town.  A detailed background regarding the facts surrounding this dispute has been set forth in prior orders issued by the Court and will not, therefore, be reiterated here.

The parties' present dispute centers around the production of a handwritten note dated March 8, 2004, which appears in the Court record as part of Exhibit D to Document No. 45, filed on June 29, 2005. The note was produced pursuant to a subpoena issued by the Padgetts to the Custodian of Records for the Los Gatos Police Department, which requested copies of all documents concerning the investigation performed by the police regarding a complaint the department received from the Padgetts about their receipt of an anonymous threat letter. In response to the subpoena, Scott Seaman, Chief of the Los Gatos Police Department ("Seaman"),[2] searched for any notes he had concerning the Padgett investigation and provided those to the Town of Los Gatos attorney, Orry Korb ("Korb"). Korb reviewed the documents prior to production and proceeded to produce a handwritten note authored by Seaman which reflects a conversation between Seaman and City Attorney Kirsten Powell.  Korb alleges that, due to the manner in which the note was written, he did not realize it reflected a conversation Seaman had with Powell but, rather, thought the memo merely noted Powell as someone to whom Seaman needed to speak. See Declaration of Orb at ¶ 3.  Accordingly, all responsive documents, including the handwritten note, were produced to the Padgetts on June 20, 2005.

---

[2] The Los Gatos Police Department responded to the subpoena pursuant to a contract between the Town of Los Gatos and the City, whereby the Department provides police services to the City. See Exhibit A to the Declaration of Kirsten Powell.

1    On June 23, 2005, three days after their receipt of documents from the Los Gatos Police
2  Department, the Padgetts deposed Loventhal, the person designated most knowledgeable with respect to
3  the City's attorneys' fees in the state court action. Both the City Attorney, Kirsten Powell, and counsel for
4  the defendants, Todd Master, attended the deposition, at which the Padgetts introduced the handwritten
5  notes as an exhibit.  Although counsel made numerous objections to the document, including relevance and
6  foundation, no objection was made based on the attorney-client privilege and, in fact, Loventhal was
7  permitted to answer questions about the note.  Neither the City Attorney, nor defense counsel, raised any
8  objections to the introduction of the note as an exhibit to the deposition.

9    Six days later, on June 29, 2005, the handwritten note was attached as part of an exhibit to a
10 supplemental declaration filed in this Court in support of the Padgetts' motion for physical examination to
11 obtain the palm prints and fingerprints of numerous current and former City officials. The declaration stated
12 that the exhibit, "contains [Chief Seaman's] notes of an apparent conversation with Kirsten Powell, listing
13 information about the criminal pretrial and a civil setting on April 27." See Declaration of Michael Reedy
14 ("Reedy"), Exh. D. On July 5, 2005, defense counsel filed five pages of objections to evidence submitted in
15 support of the Padgetts' motion, including objections to the handwritten note.  See Reedy Declaration, Exh.
16 E.  Those objections, however, were based on foundation, authenticity, and relevance.  Id.  No one
17 asserted any objection based on the attorney-client privilege.  Id.

18    In response to defendants' objections, the Padgetts filed a declaration, signed by Chief Seaman,
19 authenticating his notes and stating that, "The handwritten notes dated March 8, 2004 (page 226)
20 concerned a conversation I had with Kirsten Powell, the city attorney for the City of Monte Sereno." See
21 Reedy Decl. at ¶ 11, Exh. F, p. 2, lines 23-24. Further, the Padgetts filed a reply brief in support of their
22 motion, as well as a reply brief to defendants' objections, in which they noted that the March 8, 2004
23 document contained Chief Seaman's notes from his conversation with the City Attorney.  Reedy Decl., Exh.
24 G. All three of these documents were filed in this Court on July 7, 2005.  In addition, the following day, the
25 handwritten note was also apparently filed as an exhibit in the Santa Clara County Superior Court, as part
26 of a motion by the Padgetts to compel answers to certain deposition questions. Reedy Decl. at ¶ 14.  At no
27 time did defendants raise an objection that the note was privileged and had been inadvertently produced.
28

On November 1, 2005, the Padgetts deposed Chief Seaman. For the first time, during that deposition, defendants claimed that the note was protected by the attorney-client privilege and objected to its use during the deposition. Defendants requested that the Padgetts return the note, along with any and all copies that may have been made. The Padgetts refused, arguing that the document is not protected by the privilege, both because no attorney-client relationship arises between the City Attorney of Monte Sereno and the Los Gatos Police Chief, and based on their interpretation of the note as not containing any confidential information. They also contend that, even assuming the privilege applies, it was waived as a result of defendants' failure to assert the privilege in a timely fashion.

### III. STANDARDS

Fed. R. Evid. 501 provides, in pertinent part, that "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." The Ninth Circuit has held that the attorney-client privilege applies, "only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." Clarke v. American Commerce National Bank, 974 F.2d 127, 129 (9th Cir. 1992). This Circuit has further held that "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege." Id. The burden of establishing that the privilege applies rests with the party asserting the privilege. Id.

\\\

\\\

### IV. DISCUSSION

A.  Application of the Privilege

As an initial matter, the City claims the handwritten note that was produced to the Padgetts is protected by the attorney client privilege because the note memorializes a confidential communication occurring between the City attorney and the City's "client," in this instance, the Los Gatos/Monte Sereno Police Department. Although the Padgetts contend that the Department is not the "client" in this instance,

1  since the documents were produced by the Town of Los Gatos, defendants point out that such contention
2  falls flat based on the 1995 Agreement for Law Enforcement Services ("Agreement") which governs the
3  relationship between the Town of Los Gatos and the City.  Pursuant to that Agreement, the City pays the
4  Town for police services and the Chief of Police is considered the City's Chief of Police. See Declaration
5  of Kirsten Powell, Exh. A at p. 5.  Moreover, the City Attorney represented the City in its civil code
6  enforcement action against the Padgetts in state court. It was, therefore, according to the City, necessary
7  for the City Attorney to communicate with one of her clients, namely, Chief Seaman, in order to prepare
8  properly the City's cases and defenses.
9         The Padgetts also argue that the communication itself does not convey any confidential information
10  and is not, therefore, protected by the privilege.  As defendants acknowledge, the Ninth Circuit has found
11  the attorney-client privilege applicable to "correspondence, bills, ledgers, statements, and time records
12  which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature
13  of the services provided, such as researching particular areas of law...." Clarke v. American Commerce
14  National Bank, 974 F.2d at 129.  A review of the handwritten note dated March 8, 2004 reveals that it
15  does not disclose the motive of the client, litigation strategy, the specific nature of the services provided, or
16  legal research concerning any area of the law.  See Doc. 45, Exh. D at pp. 226-227. Rather, the note
17  appears to memorialize dates and to list items apparently recovered from a particular location.  Id.  Even
18  assuming, however, that the attorney-client privilege applies to the note, the City waived the privilege in this
19  instance by failing timely to pursue all reasonable means of preserving the confidentiality of the note, as
20  discussed below.
21         B.       <u>Waiver of the Privilege</u>
22  "[I]n determining whether a privilege has been waived by the inadvertent production of privileged
23  documents, courts within the Ninth Circuit consider 'the circumstances surrounding the disclosure,' including
24  whether the privilege holder has made efforts 'reasonably designed to protect and preserve the privilege.'"
25  United States v. de la Jara, 973 F.2d 746, 749-750 (9th Cir. 1992) (citations omitted).  The privilege is
26  deemed waived "if the privilege holder fails to pursue all reasonable means of preserving the confidentiality
27  of the privileged matter." Id. at 750.
28

As set forth above, the record in this case establishes that, while the handwritten note may have initially been inadvertently produced to the Padgetts, the City was placed on notice of such production on three separate occasions and yet failed to take any corrective action. First, on June 23, 2005, the document was introduced as an exhibit to the deposition of Loventhal, with both defense counsel and the City attorney present. See Michael Reedy Declaration at ¶ 7. Neither attorney raised the attorney-client privilege and both counsel permitted Loventhal to answer questions concerning the note. Id. Second, on July 6, 2005, Chief Seaman filed a declaration which specifically authenticated the handwritten note and identified it as a communication between himself and the City Attorney. Id. at Exh. F. That declaration, along with reply briefs filed by the Padgetts on July 7, 2005, referenced the note. Again, however, no objection to the note was raised by the City on the basis of the attorney-client privilege.[3] Third, on July 8, 2005, the note was attached as an exhibit to a motion to compel filed by the Padgetts in state court. Id. at ¶¶ 11-14, Exhs. F-I. Despite all of these filings, the City failed to assert the attorney-client privilege.

The City now contends that waiver did not occur in this instance since it did not immediately recognize the note as memorializing a confidential conversation between the Chief of Police and the City Attorney. In addition, the City attempts to shift the blame for its own oversight by arguing that plaintiffs' counsel had the ethical obligation to refrain from using the privileged document and immediately to notify the City of its inadvertent production. Neither argument is persuasive in this instance.

While there is no indication that production was other than inadvertent, the problem lies not in that fact, but in the actions, or lack thereof, that the City took with respect to preserving the confidentiality of that document once disclosure had been made. Almost immediately following production, just three days later, a City official, Loventhal, was deposed. At that deposition, the note was discussed and attached to the deposition as an exhibit, without any assertion of the privilege by the City.

Nonetheless, giving the City the benefit of the doubt that it again failed during the deposition of Loventhal to recognize that the note memorialized a conversation between the Chief of Police and the City Attorney, three days after the deposition, the note was again discussed, this time as an exhibit to a motion

---

[3] Objections to the note based on hearsay, relevance, and foundation were raised. See Reedy Declaration at ¶ 10, Exh. E at pp. 3-4.

filed in this Court. The declaration filed by counsel for the Padgetts' clearly stated, with specific reference to the note, that it is "an apparent conversation with Kirsten Powell." See Reedy Decl. at Exh. D, ¶ 9. Certainly if the City had not been placed on notice prior to this declaration that the note memorialized a conversation between Chief Seaman and the City Attorney, it was so informed by counsel's declaration filed on June 29, 2005.

Again, however, indulging every inference in favor of the City and assuming that counsel's declaration failed to place the City on notice that a potentially confidential document had been produced, less than a week later, on July 6, 2005, Chief Seaman himself signed a declaration ultimately served and filed by the Padgetts. See Reedy Decl., Exh. F. That declaration unequivocally states that his notes memorialize a conversation he had with the City Attorney. Id. Despite such notice, it was not until four months later, during a deposition on November 1, 2005, and almost five months after the note was initially produced to the Padgetts, that the City invoked the attorney-client privilege and claimed inadvertent production.

With respect to the second contention raised by the City, that counsel for the Padgetts was under an ethical obligation to inform the City that a confidential document had been produced, the Padgetts maintain the position that the document is not privileged in the first instance; a claim which as noted above is not without support. Moreover, as discussed above, the declaration filed by the Padgetts' counsel on June 29, 2005, plainly identified the note as recounting a conversation between Powell and Seaman, thereby placing the City at least on inquiry notice that a potentially privileged document had been produced.

Based on this record, the City failed timely to pursue all reasonable means to preserve the confidentiality of the handwritten note dated March 8, 2004. As a result, the City has waived the attorney-client privilege which may have been applicable to the document.[4]

## V.  CONCLUSION

For the reasons stated, defendants' motion for a protective order is denied.

IT IS SO ORDERED.

---

[4] Nothing in this order is intended to reach the issue of the scope of the waiver beyond the document at issue, as that question is not presently before the Court.

Dated:  12/21/05                         /s/ Richard Seeborg
                                         RICHARD SEEBORG
                                         United States Magistrate Judge

8

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN DELIVERED TO:**

Joseph C. Howard , Jr    jhoward@hrmrlaw.com, tmaster@hrmrlaw.com;dlongstaff@hrmrlaw.com

James McManis    jmcmanis@mfmlaw.com, smaes@mfmlaw.com

Michael Reedy    mreedy@mfmlaw.com, smaes@mfmlaw.com

Jessica Valenzuela Santamaria    jvalenzuelasantamaria@mfmlaw.com, smaes@mfmlaw.com

**Dated: 12/21/05**                                               **Chambers of Judge Richard Seeborg**

                                                                            **By:**    /s/ BAK