specific equipment can be targeted and selected, and once a forensic image is created of the associated media of that equipment, that search terms and criteria can be crafted to further target the desired objective ESI. Mr. Master is seemingly trying to twist the ORDER to be an order to look for "documents". In fact, "documents" are a very small specific limited subset of ESI, and limiting the ORDER to "documents" would be a gross misapplication of the plaintiff's request, the judge's order, and the very nature and purpose of electronic discovery, as related to this matter.

19. Mr. Master also seemingly tries to limit the ORDER to "computer equipment." Again, in fact, it is the media ASSOCIATED with (and often contained within) equipment (e.g. hard disks, CD's, tapes, etc) that is the container of ESI, and should be imaged and searched.

20. Mr. Master states that "Sue L'Heureux, the City's Finance Officer, threw out the old hard-drive after installing the new one into that laptop." Ms. L'Heureux states in her declaration that "I replaced the crashed hard drive on that laptop with the new hard drive. I threw away the old hard drive that had crashed." It is my opinion that this testimony is highly suspect. In order for this testimony to be true, five things would have to be true:

    a) Ms. L'Heureux, who is the City's Finance Officer and not the City's IT Consultant, would have had to have the knowledge to order the correct hard drive for the laptop computer in question.

    b) Ms. L'Heureux would have had to have the knowledge, skills, tools, and expertise to remove the hard disk from the laptop computer.

    c) Ms. L'Heureux would have had to have the confidence, knowledge, skills, tools, and expertise to insert, connect, test, and seal the new hard disk into the laptop computer.

    d) Ms. L'Heureux would have had to have the knowledge, skills, and expertise to configure the new hard disk, install and configure the

7

default software for the computer to work, then install and configure any City-specific software, then test all of the above.

  e) Then, Ms. L'Heureux would have had to believe that it was acceptable to discard a City asset, that contained important data that she was responsible for, and one that might have been related to a current litigation matter, and one that might be protected by Federal Gramm-Leach-Bliley and HIPAA, and State SB1386 and AB1950 regulations

  21. Mr. Master states that the "defendants contend that the parties should agree on search criteria … before Plaintiff's expert inspects … and copies information …" His contention is wholly inappropriate. His further delays at inspection and imaging are continuing to allow spoliation of evidence to occur. The imaging is independent of the inspection. The imaging, based on prudent forensic process, should occur first, to best preserve the ESI. Then, after the images are secured, the search criteria can be determined.

  22. Mr. Master states that "Allowing plaintiffs to obtain the data before agreeing on how they will use it is ripe with the potential for abuse…" His statement comes either from being misinformed, or from attempting to misrepresent what he has learned. In fact, once the imaging process has occurred, the data is not in the hands of the plaintiffs, but in the hands of the experts. And, the imaged data is not in a form that the plaintiffs could even see, even if they held the images and wanted to see the contents of the images. A forensic image required special software to be able to see "inside" the image, and to extract out any data from within the image, and can be further password protected to additionally ensure that unauthorized users cannot see the contents. Also, having a forensic image of data is absolutely NOT ripe with the potential for abuse, but instead, is ripe with opportunities for being able to preserve and protect valuable ESI for a case - - and is the very objective of the FRCP - - to allow the parties to have access to the ESI for a case.

23. Mr. Master states that "The only way to limit the possibility of plaintiffs conducting an overbroad search would be to have a protective order that identifies what terms their expert would be allowed to use in conducting his search of City files." In fact, this statement is false. He continues on to suggest the search be limited to "Boolean-type" searches. In fact, that term is vague and ambiguous. All-in-all, it is my opinion that it is wholly ineffective, unreliable, ineffective, and a bastardization of the process and desired objective results, to have any of the litigants in this case (who none of them are qualified forensic experts) dictate which tools and methods should be used in the highly-specialized field of computer forensics. It is, in my opinion, valuable to have the appropriate parties identify their objectives to the experts, so that the experts can apply their expert skills, knowledge, training, expertise, and tools to attempt to accomplish the case/litigants' objectives.

24. Mr. Master states "Seemingly, this would mean that plaintiffs' expert would read all of the 'hits' …" This is untrue. Mr. Master also states that the plaintiffs will have "unbridled access" to City data. This is also untrue. These false conclusions may have been arrived at due to Mr. Master's unwillingness to continue his questions during the January 12 conference call, as further discussed below.

25. Mr. Master seems to desire that experts not be allowed to discuss their work process, obstacles, or related issues with plaintiff, but only be limited to discussing hours worked and costs. This desire (and related approach) is unheard of by me, and would be wholly ineffective, and unproductive. My concern is that if this desire is implemented, that the very discovery process would be severely compromised and damaged.

26. Mr. Master states, related to the January 12, 2007, conference call, that "it became exceedingly difficult to obtain answers from Mr. Cooper …" In fact, after approximately 1 hour of Mr. Master's deposition-like questions and

9

PADGETT v. CITY OF MONTE SERENO, et al.                                    CASE NO. C-04-03946 JW
Declaration of Scott Cooper, CMC