United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Darla Padgett, et al.,<br><br>        Plaintiffs,<br>   v.<br><br>Brian Loventhal, et al.,<br><br>        Defendants.<br>_____/ | NO. C 04-03946 JW<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES; GRANTING PLAINTIFF JOSEPH PADGETT'S MOTION FOR ATTORNEY FEES; GRANTING PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT RICE; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' EX PARTE APPLICATION RE APPEAL TRANSCRIPT COSTS** |

## I. BACKGROUND[1]

Plaintiffs Darla and Joseph Padgett ("Plaintiff") (collectively, "Plaintiffs" or the "Padgetts") filed this action against the City of Monte Sereno and city officials alleging federal and state law claims.[2] In particular, Plaintiffs asserted claims against the following Defendants:

1. The City of Monte Sereno (SAC ¶ 2);
2. Brian Loventhal, is an individual employed by the City as City Manager, and head of the planning and code enforcement departments (SAC ¶ 3);

---

[1] For a more detailed statement of the facts, see the Court's March 20, 2007 Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, and the Court's Order Regarding Post-Trial Motions. (Docket Item Nos. 310, 934.)

[2] (See Second Amended Complaint for Violation of Civil Rights (42 U.S.C. § 1983); Violation of California Civil Code § 52.1; Abuse of Process; Civil Extortion; Intentional Infliction of Emotional Distress; Negligent Infliction of Emotional Distress, hereafter, "SAC," Docket Item No. 115.) Although Plaintiffs filed a Third Amended Complaint, it was filed without leave of Court and a post-filing motion for leave to file it was denied. (See Docket Item No. 470.)

3. A. Curtis Wright, is an individual currently employed by the City as Mayor and member of the City Council (SAC ¶ 4);
4. Erin Garner, is an individual currently employed by the City as member of the City Council (SAC ¶ 5);
5. Mark Brodsky, is an individual currently employed by the City as member of the City Council (SAC ¶ 6);
6. Barbara Nesbet, is an individual currently employed by the City as member of the City Council (SAC ¶ 7);
7. David Baxter, is an individual currently employed by the City as member of the City Council (SAC ¶ 8);
8. Lisa Rice, is an individual who was previously employed by the City. (SAC ¶ 9.)

Plaintiffs' claims were as follows:

|  | **Claim** | **Against** |
| --- | --- | --- |
| First Cause of Action | Violation of First Amendment | All Defendants |
| Second Cause of Action | Violation of Fourteenth Amendment | All Defendants |
| Third Cause of Action | Violation of Fourth Amendment | City, Loventhal, Wright, Garner, Brodsky, Nesbet and Baxter |
| Fourth Cause of Action | Violation of California Civil Code § 52.1 | All Defendants |
| Fifth Cause of Action | Civil Extortion | All Defendants |
| Sixth Cause of Action | Intentional Infliction of Emotional Distress | All Defendants |
| Seventh Cause of Action | Negligent Infliction of Emotional Distress | All Defendants |

The claims against all Defendants were dismissed or bifurcated,[3] except for Plaintiffs' claims against Brian Loventhal, the City Manager and Planning Director for the City of Monte Sereno, and Curtis Wright, a City Councilman. Plaintiffs' claims against Defendants Loventhal and Wright were tried to a jury. Plaintiffs alleged that Defendants Loventhal and Wright had engaged in a campaign of harassment, intimidation, and discrimination against them in violation of their civil rights pursuant to 42 U.S.C. § 1983.

---

[3] Plaintiffs' claims against Defendant Lisa Rice were bifurcated. Those claims are discussed below.

2

After close of the evidence, both Plaintiffs and Defendants made timely Motions for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a).[4] The Court took those Motions under submission and submitted the case to the jury with a Verdict form that asked their findings as to each Defendant. The Verdict returned by the jury was as follows:

| PLAINTIFF | CLAIM | DEFENDANT | VERDICT/AWARD |
| --- | --- | --- | --- |
| Darla Padgett | § 1983 – 1st Amendment | Brian Loventhal | Unable to reach a verdict |
| Darla Padgett | § 1983 – 1st Amendment | Curtis Wright | Verdict in favor of Defendant |
| Darla Padgett | § 1983 – 14th Amendment | Brian Loventhal | Unable to reach a verdict |
| Joseph Padgett | § 1983 – 1st Amendment | Brian Loventhal | Unable to reach a verdict |
| Joseph Padgett | § 1983 – 1st Amendment | Curtis Wright | Verdict in favor of Plaintiff: $1.00 nominal and $200,000 punitive |
| Joseph Padgett | § 1983 – 14th Amendment | Brian Loventhal | Unable to reach a verdict |

On February 4, 2010, the Court (1) entered judgment as a matter of law in favor of Defendant Loventhal on all claims against him, (2) entered judgment as a matter of law in favor of Defendant Wright as to the claim against him by Darla Padgett, (3) denied Defendant Wright's motion for judgment as a matter of law as to the claim by Joseph Padgett, (4) remitted the $200,000 punitive damages award to $10,000, and (5) denied all motions for a new trial. (See Order Regarding Post-Trial Motions, hereafter, "February 4, 2010 Order," Docket Item No. 934.)

---

[4] (See Docket Item Nos. 814, 859.)

3

Presently before the Court is (1) Defendants' Motion for Award of Attorneys Fees,[5] (2) Plaintiff Joseph Padgett's Motion for Attorneys' Fees for services of his trial counsel,[6] (3) Plaintiff Joseph Padgett's Motion for Attorneys' Fees for the services of the law firm of McManis Falkner & Morgan,[7] (4) Plaintiffs' Application for Default Judgment Against Defendant Lisa Rice,[8] and (5) Plaintiffs' Ex Parte Request to Compel Appellant Curtis Wright to Pay for Transcripts for Appeal; Order Deeming Appeal Frivolous.[9] The Court conducted a hearing on May 3, 2010. Based on the papers submitted to date and oral argument, the Court DENIES Defendants' Motion, GRANTS Joseph Padgett's Motions for attorney fees, and GRANTS Plaintiffs' Application for Default Judgment. The Court also GRANTS in part and DENIES in part Plaintiffs' Request to Compel Defendant Wright to pay for transcripts for appeal.

## II. STANDARDS

### A. Award of Attorney Fees

"A prevailing party may be awarded reasonable fees in relation to the prosecution of a federal civil rights claim." Thomas v. City of Tacoma, 410 F.3d 644, 647 (9th Cir. 2005) (citing 42 U.S.C. § 1988). "The statute does not differentiate between a prevailing plaintiff and defendant, but case law has filled that gap." Id. A prevailing plaintiff should ordinarily recover an attorney fees "unless special circumstances would render such an award unjust." Id. However, a prevailing defendant may only be awarded attorney fees pursuant to 42 U.S.C. § 1988(b) when the plaintiff's civil rights claim is "frivolous, unreasonable, or groundless," or the plaintiff "continued to litigate [the claim] after it clearly became so." Id. at 647-48.

---

[5] (hereafter, "Defendants' Motion," Docket Item Nos. 936, 937.) The moving Defendants are Brian Loventhal, the City of Monte Sereno, Barbara Nesbet, Erin Garner, Mark Brodsky, and David Baxter. (See First Motion to Amend/Correct Motion for Attorney Fees, Docket Item No. 954.)

[6] (hereafter, "Joseph Padgett's Motion," Docket Item No. 945.)

[7] (hereafter, "Motion re McManis Falkner," Docket Item No. 951.)

[8] (hereafter, "Application," Docket Item No. 955.)

[9] (hereafter, "Motion re Transcripts," Docket Item No. 992.)

4

**B.      Default Judgment**

Pursuant to Fed. R. Civ. P. 55(b)(2), a party may move the court for an entry of default judgment. The grant of a default judgment is within the discretion of the court. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986). In the Ninth Circuit, the district court must consider which of seven factors supports the entry of a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### III. DISCUSSION

**A.      Motions for Attorney Fees**

Plaintiff Joseph Padgett and Defendants both contend that they are entitled to attorney fees. Joseph Padgett contends that he is entitled to attorney fees because he prevailed on his claim against Defendant Wright.[10] Defendants contend that they are entitled to attorney fees because Plaintiff's claims were frivolous, and that Joseph Padgett prevailed on too few of his claims to warrant an award of attorney fees. (Defendants' Motion at 5-7.) The Court addresses Plaintiff's and Defendants' Motions in turn.

**1.      Plaintiff Joseph Padgett's Motions for Attorney Fees**

At issue is whether Joseph Padgett is entitled to attorney fees, and if so, the amount of such an award. Joseph Padgett used the services of the law firm of McManis Faulkner & Morgan in this case until September 20, 2006, at which time the Court granted McManis Faulkner & Morgan's motion to withdraw as attorney of record. (See Docket Item No. 275.) For approximately the next

---

[10] (See Joseph Padgett's Motion at 1-2; Motion re McManis Falkner at 1-2.) At the hearing, the Court invited Plaintiffs to also submit a declaration as to their counsel's fees in successfully defending an appeal taken by Defendants. On May 3, 2010, Plaintiffs submitted such a declaration. (See Declaration of Jeffrey Kallis in Support of the Motion for Attorney Fees for the Defendants' Appeal of the Second Wright Summary Judgment Motion, hereafter, "Kallis Decl. Re Appeal Fees," Docket Item No. 988.)

5

two years, Joseph Padgett proceeded in *pro se*. On September 19, 2008, less than a year before trial, the Court granted Plaintiffs' motion to substitute in the law firms of Kallis & Associates and Bustamante O'Hara and Gagliasso as counsel of record. (See Docket Item No. 554.) Joseph Padgett now seeks $810,777 (subject to a multiplier) in fees for work performed by McManis Faulkner & Morgan, $2,199,388.48 (subject to a multiplier) for worked performed by Kallis & Associates and Bustamante O'Hara before and during the trial, and $235,027.50 (subject to a multiplier) for worked performed by Kallis & Associates and Bustamante O'Hara in defending the appeal by Defendants. (See Motion re McManis Falkner at 9; Joseph Padgett's Motion at 20; Kallis Decl re Appeal Fees, Ex. A at 4.) Plaintiff also seeks costs in the amount of $914,419.56. (See Docket Item Nos. 944, 985, 986.) Defendant Wright objects to Plaintiff's request for costs on the ground that some of the costs were unnecessary, are not supported by sufficient documentation, are not related to the cause of action on which Joseph Padgett succeeded at trial, and are not recoverable under Fed. R. Civ. P. 54(d)(1) or 28 U.S.C. § 1920.[11]

A prevailing plaintiff in a civil rights action may be denied attorney fees only if "special circumstances exist sufficient to render an award unjust." Thomas, 410 F.3d at 648. In applying the "special circumstances" exception, a court should focus on two factors: "(1) whether allowing attorney fees would further the purposes of § 1988 and (2) whether the balance of the equities favors or disfavors the denial of fees." Id. A plaintiff need not recover on all of his claims in order to recover attorney fees. Id. at 649. Moreover, to deny an award of attorney fees notwithstanding a plaintiff's "clear victory on one of his claims for relief is an abuse of discretion." Id. Where a jury awards a plaintiff punitive damages, a denial of attorney fees is inappropriate. See id. at 648.

Where a plaintiff succeeds on only some of his claims, an award of attorney fees relating to work performed on the entire litigation of all claims "may be an excessive amount." Id. at 649. To

---

[11] (See Defendant Curtis A. Wright's Objection to Plaintiff Joseph Padgett's Bill of Costs Filed by Bustamante O'Hara & Gagliasso, hereafter, "Def. Wright's First Objection," Docket Item No. 961; Defendant Curtis A. Wright's Objection to Plaintiff Joseph Padgett's Bill of Costs Filed by Joseph Padgett on Behalf of McManis Faulkner & Morgan, hereafter, "Def. Wright's Second Objection," Docket Item No. 963.)

determine whether a fee award that covers work performed on all claims is excessive, the Ninth Circuit looks to "(1) whether [the plaintiff] prevailed on unrelated claims . . ., and (2) whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Id. (internal quotation marks omitted). In such cases, a plaintiff is entitled to attorney fees for work performed on claims that are "related" to the claim on which plaintiff was successful. Id. To determine whether claims are related, the district court "should focus on whether the claims on which [the plaintiff] did not prevail involve a common core of facts or are based on related legal theories." Id. (internal quotation marks omitted). Put another way, "unrelated claims are those that are 'entirely distinct and separate from the claims on which the plaintiff prevailed.'" Id. at 649 n.5. Nevertheless, a determination that certain claims are not related does not automatically bar an award of attorney fees associated with those unrelated claims because work performed in pursuit of the unrelated claims may be inseparable from that performed in furtherance of the related or successful claims. Id.

In this case, Joseph Padgett prevailed only on his claim against Defendant Wright. The jury awarded Joseph Padgett nominal damages and $200,000 in punitive damages on that claim. Nominal damages are awarded when there is proof of liability but no proof of actual damages. The lack of actual damages is a factor properly considered in determining reasonable attorney fees. Declining to award a party the same amount of attorney fees when there are no actual damages as would be awarded when there are substantial actual damages encourages parties to use proportionality in the directions given to their attorneys about how to conduct the litigation. If the lack of actual damages is not considered and attorney fees based solely on a finding of liability, parties would have an incentive to engage in excessive litigation under the belief that the attorney fees would be shifted to the other side.

This case is a textbook example of disproportionate litigation in relation to the actual damages. The Padgetts incurred substantial attorney fees in a fight with the City of Monte Sereno and its officials which was initiated because of a fence deliberately constructed in knowing violation of the City ordinance. Ultimately the fence was lowered by the simple and inexpensive step of

7

1 removing an ornamental trellis. While the circulation of the offensive letter by Defendant Wright is
2 inexcusable, that act was merely coincidental to the major theme of the litigation.

3 Thus, the Court finds that minimum attorney fees are warranted for the prosecution of a
4 minimally successful claim. Upon review of the claims, the result obtained, and Joseph Padgett's
5 request for attorney fees totaling approximately $3.2 million dollars, the Court finds that an award of
6 $500,000 in attorney fees is reasonable.[12] The attorneys who tried the case were competent and
7 professional; the Court's reduction of fees is no reflection on them. After all, although called
8 "attorney fees," the award is to the party not to the attorney and should be a reasonable award to the
9 party for the legal expense reasonably incurred by the party to achieve success in the litigation.

10 Plaintiff has also submitted a bill of costs totaling over $900,000. Those costs were incurred
11 jointly with an unsuccessful litigant and for claims for which there was a defense verdict. The Court
12 apportions the costs and finds that an award of $100,000 in costs is reasonable as to costs related to
13 the successful claim and related claims.[13]

14 Accordingly, the Court GRANTS Joseph Padgett's Motions for Attorney Fees against
15 Defendant Wright. The Court awards Joseph Padgett $500,000 in attorney fees and $100,000 in
16 costs against Defendant Wright.

---

[12] See Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983) ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."). In reaching this determination, the Court has considered factors relevant to determining the reasonableness of attorney fees. See Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002); Morales v. City of San Rafael, 96 F.3d 359, 363-64 (9th Cir. 1996).

[13] Although Defendant Wright has objected to numerous aspects of bills of costs submitted by Plaintiff, the Court finds Defendant Wright's objections difficult to parse because they fail to cite the page numbers or exhibit numbers within Plaintiff's bills of costs detailing the costs to which Defendant Wright objects. (See Def. Wright's First Objection at 10-13; Def. Wright's Second Objection at 11-16.) However, in light of the Court's award of substantially less costs than requested by Plaintiff and the fact that Joseph Padgett brought colorable civil rights claims raising important issues of free speech, the Court finds its award reasonable and DENIES Defendant Wright's Objections.

### 2.     **Defendants' Motion for Attorney Fees**

At issue is whether Defendants are entitled to an award of attorney fees. Defendants seek approximately $1 million in attorney fees and $200,000 in special master fees on the ground that Plaintiffs' claims were frivolous and brought in bad faith. (Defendant's Motion at 2.) Defendants Loventhal and Wright also submitted a bill of costs totaling $314,239.73. (See Docket Item No. 935.) Plaintiffs contend that their claims were not frivolous or brought in bad faith.[14]

"An action becomes frivolous when the result appears obvious or the arguments are wholly without merit." Galen v. County of Los Angeles, 477 F.3d 652, 666 (9th Cir. 2007). A prevailing defendant can recover attorney fees if the plaintiff violates this standard at any point during the litigation, not just at its inception. Id. (citation omitted). Although a finding of frivolousness is a prerequisite to an award of attorney fees to a prevailing defendant, "notwithstanding such a finding, the district court still retains discretion to deny or reduce fee requests after considering all the nuances of a particular case." Thomas, 410 F.3d at 651.

In this case, the Court does not find Plaintiffs' claims frivolous. Defendants contend that Plaintiffs' claims were frivolous because Plaintiffs' recognized that they had violated a municipal code regarding fence height and failed to produce any evidence that Defendants enforced the code against Plaintiffs with a discriminatory motive. (Defendants' Motion at 6.) However, this contention amounts to nothing more than an attack on Plaintiffs' failure to succeed on their claims. Defendants have produced no authority to support the notion that a claim is frivolous on such a basis alone. Moreover, the Court at no point indicated that it viewed the Plaintiffs' claims as frivolous. In fact, in its March 20, 2007 Order, the Court found a triable issue of fact as to whether Defendants Loventhal and Wright acted with discriminatory intent. (See Docket Item No. 310 at 19-20.) The Order covered a variety of hotly contested issues, and the mere fact that the Court ruled against Plaintiffs as to some of their claims on summary judgment does not render Plaintiffs' claims frivolous. See Galen, 477 F.3d at 667.

---

[14] (Plaintiffs' Opposition to Defendants' Motion for Award of Attorneys' Fees at 5-8, hereafter, "Pl. Opp'n," Docket Item No. 978.)

9

1    Defendants also point to the fact that Plaintiffs persisted with their claims against Loventhal
2 even after Defendant Rice admitted to authoring the anonymous note that was sent to their home.
3 (Defendants' Motion at 7.) In the Court's February 4, 2010 Order, the Court explained that
4 Plaintiffs sought to impeach Rice's confession and show that the letter had actually been sent by
5 Loventhal or someone acting under his direction. (See Docket Item No. 934 at 13.) The Court
6 granted Plaintiffs extensive additional discovery to attempt to uncover evidence that would impeach
7 Rice, and declined to regard Rice's confession as dispositive of Loventhal's liability in light of the
8 ongoing discovery. (See id. at 10-11.) Although Plaintiffs were ultimately not able to show that
9 Loventhal or someone acting under his direction sent the note, Defendants have not shown that
10 Plaintiffs' position was "wholly without merit." Thus, the Court declines to find Plaintiffs' claims
11 frivolous or unfounded.

12    Accordingly, the Court DENIES Defendants' Motion for Attorney Fees.[15]

**B.    Plaintiffs' Application for Default Judgment Against Defendant Rice**

14    Plaintiffs move the Court for an entry of default judgment against Defendant Lisa Rice on
15 their claims under Section 1983 for violation of the First and Fourteenth Amendments and common
16 law claims for intentional and negligent infliction of emotional distress. (See Application at 5-6.)
17 Plaintiffs seek over $1 million in compensatory damages for Darla Padgett, $200,000 in damages for
18 emotional distress, and punitive damages in an unspecified amount. (See Application at 13.) On
19 April 22, 2010, Defendant Rice, acting in *pro se*, filed a letter with the Court requesting that the
20 Court dismiss the case against her. (hereafter, "Letter," Docket Item No. 984.) Defendant Rice
21 states that she made a regretful mistake in sending the letter to the Padgetts, and that she is "in the
22 process of having to declare bankruptcy." (Id. at 2.)

---

[15] Similarly, Defendants have made no showing that they are entitled to costs even if they are not entitled to attorney fees. In light of Joseph Padgett's status as a prevailing party and the fact that Plaintiffs presented colorable civil rights claims, the Court declines to award costs to Defendants Loventhal and Wright. See Washburn v. Fagan, 331 Fed. Appx. 490, 494 (9th Cir. 2009). Thus, the Court DENIES as moot Plaintiffs' Objections to Defendants' Bill of Costs Submitted February 18, 2010. (Docket Item No. 965.)

10

### 1. Defendant Rice's Confession, Default, and Testimony at Trial

In June 2005, defense counsel notified the Padgetts that Lisa Rice, a Monte Sereno staff member admitted that she was the person who had written and sent the threatening letter to the Padgetts. The Padgetts were told that Rice had signed a written statement that she had acted on her own volition. The Padgetts were told that Rice's employment with the City had been terminated immediately after her confession.

The Padgetts added Rice as a Defendant to this lawsuit in their Second Amended Complaint. She never answered the complaint and her default has been entered. (Docket Item No. 533.) In May 2009, during the trial, Rice testified to having sent the threatening letter to the Padgetts on her own volition and without any involvement by Defendant Loventhal. (See Docket Item No. 934 at 11.) Rice testified as follows:

> She sent the letter because she was upset with the Padgetts. As the Padgetts attempted to gather information from Monte Sereno city records about building permits, there were many occasions when the Padgetts came to Rice's office. Joseph Padgett was rude and harassed her when he came to City Hall. Loventhal had given to her and other staff members a newspaper article about Joseph Padgett. As a survivor of molestation, she was particularly upset by the presence of the word "pedophile" in the article about Joseph Padgett. In a fit of anger, she composed and mailed the letter to the Padgetts, demanding that they leave the City. With the letter, she had enclosed a copy of the article and she threatened to circulate the article throughout the community. Neither Loventhal nor any other City official knew of these actions at the time she took them. During the course of the lawsuit, she came to realize that Loventhal was being blamed for her letter. Out of loyalty and respect for Loventhal and regret that her conduct was being blamed on him, she confessed to Loventhal and the City Attorney to having sent the letter.

(Id.)

### 2. Plaintiffs' Section 1983 Claim against Defendant Rice

At issue is whether Defendant Rice acted in her official capacity in sending the letter to Plaintiffs, as is required for liability under Section 1983.

To be liable under Section 1983, a defendant must have been a "state actor"—*i.e.*, a defendant must have "acted under the color of state law." See Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 899-900 (9th Cir. 2008).

Here, the evidence shows that Defendant Rice was not acting under color of state law when she sent the letter. Rice testified that although she typed the letter at work on her work computer,

11

1 she did so after business hours. (See Application at 8-9.) Moreover, Rice acted on her own without
2 any involvement of Defendant Loventhal or any other City Official. In light of these facts, the Court
3 finds that Defendant Rice was not acting under the color of law when she sent the letter and
4 therefore, is not subject to liability under Section 1983.

5 Accordingly, the Court DISMISSES Plaintiffs' Section 1983 claim against Defendant Rice
6 with prejudice and proceeds to analyze Plaintiffs' Application for Default Judgment solely as to
7 their state law claims for intentional and negligent infliction of emotional distress.

**3.   Default Judgment**

9 The decision to grant or deny a default judgment under Fed. R. Civ. P. 55(b) is within the
10 discretion of the Court. See Eitel, 782 F.2d at 1471-72. Although there is strong public policy
11 favoring decisions on the merits, it is only one factor among several to be considered. Thus, the
12 Court examines whether, under the other Eitel factors, default judgment is appropriate in this case.

13 First, Defendant has failed to defend the action.[16] Defendant has made no showing of
14 excusable neglect. If Plaintiffs are not granted default judgment, they will be denied the right to
15 judicial resolution of the claims presented, and would be without recourse for protection of their
16 common law rights against Defendant Rice. The Court finds that Defendant's lack of excusable
17 neglect, measured against the possible prejudice to Plaintiffs, favors default judgment.

18 Second, once the Clerk of Court enters default, all well-pled allegations regarding liability
19 are taken as true except as to the amount of damages. Fair Housing of Marin v. Combs, 285 F.3d
20 899, 906 (9th Cir. 2002). Here, the Clerk of Court entered default on July 28, 2008. Upon review of
21 Plaintiffs' Complaint, the Court finds that Plaintiffs have adequately alleged a cause of action for

---

[16] Although Defendant Rice testified at trial and recently filed her Letter requesting dismissal of the case, she did not file an Answer to the claims against her. Moreover, her Letter offers no excuse for her failure to communicate with the Court other than the bare contention that prior to the trial, she "was [led] to believe by the City of Monte Sereno [that she] was done with the matter." (Letter at 1.) Thus, even if the Court were to construe Defendant Rice's Letter as a motion to set aside the entry of default in light of her *pro se* status, the Court finds that Defendant Rice has presented no ground that would justify setting aside the entry of default.

1 intentional and negligent infliction of emotional distress.[17] Thus, the merits of Plaintiffs' claims are
2 deemed valid. Since the allegations are taken to be true, there is no dispute concerning material
3 facts. Therefore, these factors favor granting default judgment.

4 With respect to the sum of money at stake, a large amount of money in dispute generally
5 weighs against granting default judgment. See Eitel, 782 F.2d at 1472. Here, Plaintiffs seek
6 $1,262,615.23 for Darla Padgett for "damages associated with [her] relocation" out of Monte Sereno
7 due to fear for her family's safety, $200,000 in emotional distress damages, and punitive damages in
8 an unspecified amount to deter similar conduct in the future. (Application at 12-13.) Although the
9 requested amount of damages is substantial, the Court finds that it is not so large as to outweigh the
10 other five Eitel factors that favor a grant of default judgment.

11 Thus, the Court finds that the Eitel factors weigh in favor of granting default judgment.
12 Accordingly, the Court GRANTS Plaintiffs' Motion for Default Judgment as to Plaintiffs' claims for
13 intentional and negligent infliction of emotional distress.

**4. Remedy**

15 With respect to Plaintiffs' request for nearly $1.5 million in compensatory damages against
16 Defendant Rice, the Court finds that Plaintiffs have not provided sufficient evidence to support such
17 an award. In fact, the record shows that Darla Padgett was impeached during trial as to her claim
18 regarding the reasons and costs for her relocation to a different state. The evidence shows that there
19 were job related reasons unconnected to Darla Padgett's claim of being "chased out of town" by fear
20 based on the receipt of the letter sent by Defendant Rice. Accordingly, the Court finds an award of
21 $20,000 in compensatory damages to each Plaintiff to be reasonable.

---

[17] The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Lucas v. City of Visalia, No. 1:09-CV-1015 AWI DLB, 2010 WL 1444667, at *6 (E.D. Cal. Apr. 12, 2010). A claim for negligent infliction of emotional distress is simply a claim for negligence—a plaintiff must allege (1) duty, (2) breach of duty, (3) causation, and (4) damages. See Brahmana v. Lembo, No. C-09-00106 RMW, 2010 WL 290490, at *2 (N.D. Cal. Jan. 15, 2010).

13

1    With respect to Plaintiffs' request for punitive damages, the Court declines to award any
2 additional damages.  Compensatory damages and punitive damages serve different purposes;
3 compensatory damages redress concrete loss caused by the defendant's wrongful conduct, while
4 punitive damages are aimed at deterrence and retribution.  <u>Planned Parenthood of
5 Columbia/Willamette Inc. v. American Coalition of Life Activists</u>, 422 F.3d 949, 953 (9th Cir.
6 2005).  In this case, based on Defendant Rice's testimony at the trial and at the prove up hearing, the
7 Court finds that an award of punitive damages is not necessary for deterrence.  Defendant Rice has
8 lost her job with the City of Monte Sereno and is extremely remorseful for her conduct.  Based on
9 the record as a whole, the Court finds that there is no likelihood that Defendant Rice will ever
10 commit the same tortious offense against these Plaintiffs or any other similarly situated person
11 again.  Accordingly, the Court denies Plaintiffs' request for punitive damages.

12 **C.     Plaintiffs' Ex Parte Request Regarding Cost of Appeal Transcripts**

13   On March 5, 2010, Defendant Wright filed a Notice of Appeal to the Ninth Circuit Court of
14 Appeals.  (Docket Item No. 967.)  On March 8, 2010, Plaintiffs filed a Notice of Cross-Appeal to the
15 Ninth Circuit.  (Docket Item No. 970.)  On April 6, 2010, Defendant Wright filed his Transcript
16 Designation and Ordering form, indicating that no transcripts were needed.  (Opp'n re Transcripts,
17 Ex. A.)  On April 12, 2010, Plaintiffs responded by letter to Defendant Wright in which Plaintiffs
18 designated a list of portions of transcripts they deemed necessary for the appeals.  (Motion re
19 Transcripts at 3; Docket Item No. 980, Ex. A.)  On April 14, 2010, Defendant Wright responded by
20 letter that he would not pay for such transcripts as part of the appeals and did not believe them to be
21 necessary.  (Docket Item No. 980, Ex. B.)  On April 19, 2010, Plaintiffs filed their designation of the
22 additional transcripts with the Ninth Circuit.  (<u>See</u> Docket Item No. 980, Ex. C.)

23   Plaintiffs move to require Defendant Wright to pay for transcripts designated by Plaintiffs as
24 necessary for the appeals.  (Motion re Transcripts at 3-5.)  Plaintiffs designate the following
25 transcripts:

26   (1)   All trial testimony of Brian Loventhal, Curtis Wright, Cindy Brain, Joseph Padgett, Barbara Nesbitt, Erin Gartner, and Ron Schindler.
27
28                                                         14

    (2)    All Rule 50(a) Motions made on the record and all argument and court determinations relating to these Rule 50(a) Motions.

    (3)    All Rule 50(b) Motions made on the record and all argument and court determinations relating to these Rule 50(a) Motions.

    (4)    Plaintiffs' closing argument and rebuttal.

    (5)    Transcripts of all hearings associated with Defendants' First Motion for Summary Judgment.

(Docket Item No. 180, Ex. C.) Defendant Wright contends that the transcripts are relevant only to Plaintiffs' cross-appeal, if at all, and that Defendant Wright should therefore not be required to pay for the transcripts.[18] (Opp'n re Transcripts at 6.) Defendant Wright also contends that Plaintiffs should be required to pay for the following additional transcripts, which Defendant Wright contends are relevant to the cross-appeal: All trial testimony of Kirsten Powell, Howard Bell, Mark Brodsky, Lisa Rice, Ken Moses, Dean Harris, Andrea Chelemengos, David Baxter, and James Hunter. (Opp'n re Transcripts at 7.)

Federal Rule of Appellate Procedure 10-3.1 states as follows:

**(a) Appellant's Initial Notice.**  Unless the parties have agreed on which portions of the transcript to order, or appellant intends to order the entire transcript, appellant shall serve appellee with a notice specifying which portions of the transcript appellant intends to order from the court reporter, as well as a statement of the issues the appellant intends to present on appeal. In the alternative, appellant shall serve on appellee a statement indicating that appellant does not intend to order any transcripts. This notice and statement shall be served on appellee within 10 days of the filing of the notice of appeal or within 10 days of the entry of an order disposing of the last timely filed motion of a type specified in FRAP 4(a)(4).

**(b) Appellee's Response.**  Within 10 days of the service date of appellant's initial notice, appellee may respond to appellant's initial notice by serving on appellant a list of any additional portions of the transcript that appellee deems necessary to the appeal.

**(e) Paying for the Transcript.**  On or before filing the designation form in the district court, appellant shall make arrangements with the court reporter to pay for the transcripts ordered. . . . . Appellant must pay for the original transcript.

**(f) Paying for Additional Portions of the Transcript.**  If appellee notifies appellant that additional portions of the transcript are required pursuant to Circuit Rule 10-3.1(b), appellant shall make arrangements with the court reporter to pay for these additional portions unless appellant certifies that they are unnecessary to the appeal and explains why not. If such a

---

[18] (Defendant Curtis A. Wright's Opposition to Plaintiffs' Ex Parte Request to Compel Curtis A. Wright to Pay for Transcripts for Appeal at 6, hereafter, "Opp'n re Transcripts," Docket Item No. 993.)

15

certificate is filed in the district court, . . . the district court shall determine which party shall pay for which portions of the transcript.

Federal Rule of Appellate Procedure 28-1 states as follows:

**(a) Applicability.** This rule applies to a case in which a cross-appeal is filed.

**(b) Designation of Appellant.** The party who files a notice of appeal first is the appellant for the purposes of this rule and Rules 30 and 34.

Since Defendant Wright filed his appeal on March 5, 2010 and Plaintiffs filed their cross-appeal on March 8, 2010, Defendant Wright is the "Appellant" and Plaintiffs are "Cross-Appellants." In the normal course, the Appellant is required to pay for the transcripts. See Fed. R. App. P. 10.3-1(e). However, in light of the apparent volume of the additional transcripts designated by both sides relevant to both the appeal and cross-appeal, the Court finds it appropriate to apportion the cost evenly between Defendant Wright and Plaintiffs.

Accordingly, the Court GRANTS in part Plaintiffs' Motion re Transcripts. Plaintiffs shall pay half of the total cost of all transcripts and Defendant Wright shall pay half of the total cost of all transcripts.

## IV. CONCLUSION

The Court DENIES Defendants' Motion for Attorney Fees. The Court GRANTS Plaintiff Joseph Padgett's Motion for Attorney Fees against Defendant Wright. The Court awards Joseph Padgett $500,000 in attorney fees and $100,000 in costs. Defendant Wright shall pay Plaintiff Joseph Padgett the total amount of $600,000 within **sixty (60) days** from the date of this Order.

The Court GRANTS Plaintiffs' Motion for Default Judgment against Defendant Rice. The Court awards Plaintiff Darla Padgett $20,000 in compensatory damages and awards Plaintiff Joseph Padgett $20,000 in compensatory damages. No punitive damages are awarded to either Plaintiff. The Court DISMISSES Plaintiffs' Section 1983 claim against Defendant Rice with prejudice.

The Court GRANTS in part Plaintiffs' Motion re Transcripts. Plaintiffs shall pay half of the total cost of all transcripts on appeal and Defendant Wright shall pay half of the total cost of all transcripts on appeal.

16

Judgment shall be entered in favor of Plaintiffs against Defendant Rice.

Dated: June 9, 2010

_____
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Andrew Vinson Stearns astearns@boglawyers.com
Joseph C. Howard jhoward@hrmrlaw.com
M. Jeffery Kallis M_J_Kallis@Kallislaw.org
Thomas H R Denver tdenver@mediationmasters.com

Lisa M. Rice
2276 Alexian Drive
San Jose, CA 95116

**Dated: June 9, 2010**                                              **Richard W. Wieking, Clerk**

                                                                        **By:**      **/s/ JW Chambers**
                                                                               **Elizabeth Garcia**
                                                                               **Courtroom Deputy**

**United States District Court**
For the Northern District of California