United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JOSEPH PADGETT, et al.,

Plaintiffs,

v.

BRIAN LOVENTHAL, et al.,

Defendants.

Case No. 5:04-cv-03946-EJD

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS; DENYING DEFENDANTS' MOTION FOR COSTS**

Re: Dkt. Nos. 1041, 1044, 1050

The instant case is a civil rights action brought by Plaintiffs Joseph Padgett ("Mr. Padgett") and Darla Padgett ("Ms. Padgett") against Defendants City of Monte Sereno ("City"), Brian Loventhal ("Loventhal"), A. Curtis Wright ("Wright"), Erin Garner ("Garner"), Mark Brodsky ("Brodsky"), Barbara Nesbet ("Nesbet"), and David Baxter ("Baxter") (collectively, "Defendants").[1] Presently before the Court are Plaintiffs' Motion for Attorneys' Fees and Costs, and Defendants' Motion for Costs. Having reviewed the parties' briefing, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Attorneys' Fees and Costs, and DENIES Defendants' Motion for Costs.

## I. BACKGROUND

### A. Underlying Litigation

Plaintiffs filed the instant action against eight defendants stemming from a dispute with the

[1] Defendants' motion does not include Defendant Lisa M. Rice. See Dkt. No. 1041 at 1. Thus, Rice is not a participant in these motions.

City about enforcement of a fence height ordinance. The defendants were the City, the City Manager, the Mayor, members of the City Council, and a former City employee. Plaintiffs asserted seven claims for violation of the First Amendment, violation of the Fourteenth Amendment, violation of the Fourth Amendment, violation of California Civil Code § 52.1, civil extortion, intentional infliction of emotional distress, and negligent infliction of emotional distress. These claims were either dismissed or bifurcated, thus by the eve of trial, only two claims survived: their First and Fourteenth Amendment claims against Loventhal and Wright. As to these defendants, Plaintiffs alleged that they engaged in a campaign of harassment, intimidation, and discrimination against Plaintiffs in violation of their civil rights pursuant to 42 U.S.C. § 1983.

The case proceeded to a jury trial, and Judge James Ware was the presiding judge. As to the First Amendment claims against Wright, the jury returned a verdict against Ms. Padgett, but in favor of Mr. Padgett. Mr. Padgett was awarded nominal damages of $1.00 and punitive damages of $200,000. The jury was unable to reach a verdict as to the remaining First and Fourteenth Amendment claims against Loventhal.

Pursuant to Federal Rule of Civil Procedure 50(b), all remaining parties moved for judgment as a matter of law. The Court ruled in favor of Loventhal as to all of the claims against him, ruled in favor of Wright as to Ms. Padgett's claim against him, ruled against Wright as to the claim by Mr. Padgett, remitted the $200,000 punitive damages award to $10,000, and denied all motions for a new trial.

In the end, Mr. Padgett prevailed on one claim—a § 1983 First Amendment retaliation claim—against Wright, and was awarded nominal damages of $1.00 and punitive damages of $10,000. Ms. Padgett prevailed on no claims.

**B. Procedural History**

When Plaintiffs commenced this lawsuit in September 2004, they were represented by the law firm McManis Faulkner & Morgan ("McManis Firm"). See Dkt. No. 1. In June 2006, the

McManis Firm moved to withdraw as counsel for Plaintiffs, and in September 2006, the court granted the motion. See Dkt. Nos. 250, 260, 275. Plaintiffs proceeded *pro se* until the law firms Kallis & Associates ("Kallis Firm") and Bustamante O'Hara and Gagliasso ("Bustamante Firm") requested to serve as counsel of record in September 2008. See Dkt. No. 552. The court granted the substitution of counsel. See Dkt. No. 554. Trial commenced in May 2009.

A jury verdict was returned in June 2009. See Dkt. No. 843. Thereafter, the parties proceeded with post-trial motions, as discussed above. In February 2010, Defendants moved for attorneys' fees and costs, and Plaintiffs moved for attorneys' fees and costs for the Kallis and Bustamante Firms, and for the McManis Firm. See Dkt. Nos. 936, 937, 944, 945, 951, 954, 985, 986. In June 2010, Judge Ware issued an order granting Plaintiffs $500,000 in attorneys' fees and $100,000 in costs, and denying Defendants' requests for attorneys' fees and costs. See Dkt. No. 995 at 8, 10. Defendants appealed the decision to the Ninth Circuit. See Dkt. No. 1000.

In February 2013, the Ninth Circuit vacated and remanded Judge Ware's ruling. See Dkt. No. 1023. It stated that "[b]ecause the district court did not explain how it determined that $500,000 in fees and $100,000 in costs was appropriate or why it denied costs to the prevailing defendants," it could not review the district court's reasoning for abuse of discretion. Id. at 5-6. The Ninth Circuit instructed the district court to explain how it used the lodestar method to reduce Plaintiffs' fees and how it calculated Plaintiffs' reduced costs, and to explain why costs to the Defendants were denied. Id. at 9. In May 2013, this case was reassigned to the undersigned judge. See Dkt. No. 1030.

A case management conference was held in October 2013 to discuss renewed motions for attorneys' fees and costs. See Dkt. No. 1039. The parties were ordered to submit renewed motions with supporting documentation in accordance with the briefing schedule set forth by the Court. See Dkt. No. 1040. In January 2014, this Court acknowledged the receipt of the motions filed by the Kallis and Bustamante Firms, as well as Defendants. See Dkt. No. 1054 at 2. Mr.

United States District Court
Northern District of California

Padgett, however, failed to file a motion for attorneys' fees and costs on behalf of the McManis Firm; thus, to the extent sought, this Court denied Mr. Padgett's request. Id.

Accordingly, the Court now evaluates only the motions for attorneys' fees and costs filed by Plaintiffs for the services provided by the Kallis and Bustamante Firms, and the motion for costs filed by Defendants. See Dkt. Nos. 1041, 1050.

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 1988, "[a] party who prevails on a claim under § 1983 is entitled to reasonable attorneys' fees unless special circumstances would render such an award unjust." Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1110 (9th Cir. 2014). Congress passed the statute "to attract competent counsel to prosecute civil rights cases," thus "fee awards should be the rule rather than the exception." Barnard v. Theobald, 721 F.3d 1069, 1077 (9th Cir. 2013).

In determining the reasonableness of the fees, the district court has discretion. Chaudhry, 751 F.3d at 1110. In the context of civil rights litigation, "the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). The district court, however, must provide a clear and concise explanation of its reasons for the fee award. Chaudhry, 751 F.3d at 1110.

## III. DISCUSSION

At issue are the motion for attorneys' fees and costs filed by Plaintiffs for the services provided by the Kallis and Bustamante Firms, and the motion for costs filed by Defendants. See Dkt. Nos. 1041, 1050.

### A. Plaintiffs' Request for Attorneys' Fees

Plaintiffs seek $1,779,953.99 in attorneys' fees—$1,047,887.63 for the Bustamante Firm and $732,066.36 for the Kallis Firm.[2] Dkt. No. 1050 at 15. In determining the reasonableness of

[2] In their brief, Plaintiffs state that they seek $1,106,923.13 in attorneys' fees. Dkt. No. 1050 at 15. In counsel's declarations, however, the total amount sought is $1,779,953.99. Dkt. Nos. 1047 at ¶ 13; 1048 at ¶ 25. The latter amount will be used.

United States District Court
Northern District of California

the fees, the lodestar calculation will be examined first, followed by an assessment of a downward adjustment based on the results obtained.

**1. Lodestar Calculation**

"When determining a reasonable fee award, the court must start by calculating the lodestar amount, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Chaudhry, 751 F.3d at 1110 (internal quotations omitted). In this instance, Plaintiffs request a lodestar amount reflecting a 25 percent reduction from their original lodestar amount[3]:

| Law Firm | Hourly Rate | Hours Spent | Original Lodestar Amount | Lodestar Amount with 25% Reduction |
|---|---|---|---|---|
| Bustamante O'Hara & Gagliasso | Partner: $450/hour<br>Associate: $150-$300/hour<br>Law Clerk: $150/hour<br>Paralegal: $150/hour | 4,586.44 | $1,397,183.50 | $1,047,887.63 |
| Kallis & Associates | Partner: $450/hour | 2,431.95 | $976,088.48 | $732,066.36 |
| | **TOTAL** | **7,018.39** | **$2,373,271.98** | **$1,779,953.99** |

***i. Reasonable Rates***

"Fee applicants have the burden of producing evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Chaudhry, 751 F.3d at 1110 (internal quotations omitted). The relevant community is the district court's forum, and affidavits regarding prevailing fees are satisfactory evidence of the prevailing market rate. Id. "Once a fee applicant presents such

[3] See Dkt. Nos. 1047, 1048, 1049.

evidence, the opposing party has a burden of rebuttal that requires submission of evidence challenging the accuracy and reasonableness of the facts asserted by the prevailing party in its submitted affidavits." Id. at 1110-11 (internal quotations omitted).

The relevant community for this motion is the Northern District of California. A reasonable hourly rate for civil rights attorneys in this community is up to $700 for partners, up to $350 for associates, up to $200 for paralegals and law clerks. See e.g., Campbell v. Nat'l Passenger R.R. Corp., 718 F. Supp. 2d 1093, 1099-1103 (N.D. Cal. 2010); Californians for Disability Rights v. Cal. Dep't of Transp., 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010) (James, J.); Simon v. Toshiba Am., 2010 WL 1757956, at *4 (N.D. Cal. Apr. 30, 2010) (Patel, J.).

Here, the Bustamante and Kallis Firms provide affidavits discussing the qualifications of the partners, associates, paralegal and law clerk involved in this case. See Dkt. Nos. 1047-49. The billing rates appear to be below the prevailing market rate for this district, and Defendants do not oppose the rates proposed by counsel. Therefore, the requested billing rates are reasonable.

**ii. *Reasonable Hours***

Generally "the district court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." Chaudhry, 751 F.3d at 1111. The number of hours can be reduced for duplicative or unnecessary work, and the district court can impose up to a ten percent reduction without explanation. Id. "However, where the disparity is larger, a more specific articulation of the court's reasoning is expected." Id. (internal quotations omitted).

Here, the Bustamante Firm provides itemized billings showing the individual timekeeper, the amount spent on each task, and the tasks are sufficiently detailed to ascertain whether the amount spent on the task is reasonable. Dkt. Nos. 1048-1, 1048-2, 1048-3, 1049-1. Upon examination, several billing entries do show duplicative work or an excessive amount of time spent on tasks such as reviewing and analyzing the docket, filing documents, evaluating case for

United States District Court
Northern District of California

ongoing litigation strategy, meeting with clients for factual background, reviewing and analyzing the adverse party's briefs, document review, and reviewing and analyzing pre- and post-trial motions. See id. The Bustamante Firm, however, has already deducted 25 percent from the lodestar calculated in its billings. Given that Defendants do not oppose the billing hours for the Bustamante Firm, and the 25 percent reduction is reasonable, no further deductions will be made.

The Kallis Firm offers a one-page itemized billing accounting for work performed in a one-year-and-a-half period. Dkt. No. 1047-1. Defendants argue that the Kallis Firm's block billing is excessive. Dkt. No. 1064 at 15-16. The Court agrees. Such block billing includes: 62.25 hours for "94 Misc. E-mail and 34 telephonic communications;" 165.25 hours for "Review underlying exhibits and files federal case;" 146.5 hours for "Review Pacer file 552 documents;" 129.4 hours for "write/edit/meet on Appellee opposition;" 223.5 hours for "Trial prep/exhibits/sumies/subpos/copy Khuu;" 187.5 hours for "Trial prep – review of all transcripts and discovery;" and 275.5 hours for "trial and review – meetings w/ witnesses, clients." Id. In regards to block billing, the Ninth Circuit has stated that "[t]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007). In this instance, the Kallis Firm failed to carry its burden because block billing makes it more difficult to determine the amount of time actually spent on each task. See id. Additionally, the billing shows that Mr. Kallis was the only member of his Firm to work on this case, without the assistance of a paralegal or law clerk. Thus, having to bill administrative tasks at $450 per hour is excessive. Given that the Kallis Firm has already deducted 25 percent, an additional 10 percent reduction of its lodestar is appropriate because of the excessive block billing and lack of clarity regarding timekeepers.

**iii. *Conclusion as to Lodestar Calculation***

In sum, the following lodestar calculation is deemed to be reasonable:

United States District Court
Northern District of California

| Law Firm | Hourly Rate | Hours Spent | Approved Lodestar Amount with Reductions |
|---|---|---|---|
| Bustamante O'Hara & Gagliasso | Partner: $450/hour<br><br>Associate: $150-$300/hour<br><br>Law Clerk: $150/hour<br><br>Paralegal: $150/hour | 4,586.44 | $1,047,887.63 |
| Kallis & Associates | Partner: $450/hour | 1,410 | $634,457.51[4] |
| | **TOTAL** | **7,018.39** | **$1,682,345.14** |

Under the lodestar method, a reasonable amount of attorneys' fees is $1,682,345.14.

**2. Lodestar Adjustment in Light of Results Obtained**

Defendants' opposition to the attorneys' fees stem from Plaintiff's limited success at trial. Dkt. No. 1064 at 11. Only Mr. Padgett prevailed at trial, on one claim against one defendant, and obtained $1.00 in nominal damages and $10,000 in punitive damages. Given this result, it would be unreasonable to award over $1.6 million in attorneys' fees.

Defendants contend that Plaintiffs are not entitled to attorneys' fees at all because of this limited success. Id. at 10-11. This argument, however, fails. While Mr. Padgett succeeded on only one claim, he did, in fact, succeed. As the Ninth Circuit has stated, "[t]o deny an award of attorney's fees notwithstanding Plaintiff's clear victory on one of his claims for relief is an abuse of discretion." Thomas v. City of Tacoma, 410 F.3d 644, 649 (9th Cir. 2005). Thus, this Court acknowledges that in the spirit of Section 1988 and the success of at least one claim, Plaintiffs do deserve *some* attorneys' fees.

Defendants also mention that Wright cannot pay any fee against him because he filed for bankruptcy in April 2014. Dkt. No. 1064 at 24. Wright, however, does not elaborate on this

[4] This amount was derived by subtracting $341,630.97 (35% of $976,088.48) from $976,088.48.

United States District Court
Northern District of California

argument. Also, Wright's counsel is the same counsel who filed Defendants' motion for costs as to all Defendants. Thus, there is no indication that the City will be unable to indemnify Wright. Given the lack of details by Wright, this argument is not sufficient to deny Plaintiffs an award for attorneys' fees.

A stronger argument from Defendants is that the attorneys' fee award should be adjusted downward to reflect Plaintiffs' limited success. Dkt. No. 1064 at 13-14. In cases where a plaintiff has obtained minimal success, the Ninth Circuit has employed a two-part test: "(1) whether Plaintiff prevailed on unrelated claims (hours expended on unrelated, unsuccessful claims should not be included in an award of fees), and (2) whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Thomas, 410 F.3d at 649 (internal quotations omitted).

As to the first part of the test, "the district court should focus on whether the claims on which Plaintiff did not prevail involve a common core of facts *or* are based on related legal theories." Id. (emphasis in original) (internal quotations omitted). "To the extent the claims are related, Plaintiff should recover reasonable fees for prosecuting those claims." Id. To the extent the claims are not related, a plaintiff may still recover fees if the work performed on the unrelated claims is inseparable from the work performed on the related, successful claims. Id.

Here, the prevailing claim was Mr. Padgett's First Amendment claim against Wright, whereby Wright sent, directed, or encouraged sending threatening letters to Plaintiffs and disseminated a news article placing Plaintiffs in a negative light. Dkt. No. 310 at 11. This claim arose from Plaintiffs' attempt for redress from the City with respect to the requirement that Plaintiffs change the height of a fence on their property. Id. at 10. As to the unsuccessful claims, Mr. Padgett asserted a similar First Amendment claim against Loventhal, Ms. Padgett also asserted a similar First Amendment claim against both Wright and Loventhal, and each Plaintiff asserted a Fourteenth Amendment claim against both Wright and Loventhal based on Defendants'

United States District Court
Northern District of California

decision not to enforce the fence ordinance against other homeowners. Id. at 12-13. Given these claims, they all arise from a common core of facts—the enforcement of a height restriction on Plaintiffs' fence and the aftermath when Plaintiffs complained to the City. See McCown v. City of Fontana, 565 F.3d 1097, 1103 (holding that even though plaintiff's claims were brought on the basis of different legal theories against different defendants, they all arose from a common core of facts—plaintiff's arrest—thus, the district court did not abuse its discretion when it treated the successful and unsuccessful claims as related). Therefore, this is sufficient to find that Plaintiffs' successful and unsuccessful claims were related.

As to the second part of the test, "the heart of this inquiry is whether Plaintiff's accomplishments in this case justify the fee amount requested." Thomas, 410 F.3d at 650 (internal quotations omitted). Since there is no precise rule or formula to make this determination, the district court has discretion to determine whether the nominal and punitive damages award supports Plaintiffs' fee request. Id. The Ninth Circuit has further provided that claims dismissed at summary judgment figures into the calculation of attorneys' fees. McCown, 565 F.3d at 1103.

Here, Plaintiffs alleged seven claims against eight defendants. See Dkt. No. 310 at 4. At summary judgment, only two claims against two defendants survived. See id. at 21. When considering that two out of seven claims survived summary judgment and were tried, it can be said that Plaintiffs were successful on two-sevenths, or 28 percent, of their claims. In an effort to quantify, 2/7th of the lodestar amount of $1,682,345.14 amounts to $471,056.64. Given Plaintiffs' limited success, this amount is a reasonable attorneys' fee award.

When considering a reasonable fee award, the Ninth Circuit has stated that results should be measured not solely in terms of damages, but also in nonmonetary benefits to the plaintiff and members of society. McCown, 565 F.3d at 1105. "[W]hen a decision has served the public interest by vindicating important constitutional rights an award of attorney's fees that is disproportionate to the actual damages may be appropriate." Id. (internal quotations omitted).

United States District Court
Northern District of California

Here, Plaintiffs argue that this case stands as precedent for other city officials who choose to ostracize and retaliate against citizens that disagree with them openly in government meetings and through the media. Dkt. No. 1050 at 9. In civil rights actions, it is important for members of the community to come forward and file their grievance against their local representatives. It is very significant that Mr. Padgett prevailed on a First Amendment claim that a jury of his peers found to be meritorious. Thus, given the nonmonetary benefit to Plaintiffs and others in the community, an attorneys' fee award of $471,056.64 is reasonable even though Mr. Padgett received minimal damages.

In sum, considering the results obtained by Mr. Padgett, the lodestar figure above should be adjusted downward. Accordingly, an amount of $471,056.64 is a reasonable attorneys' fee award.

**3. <u>Post-Judgment Interest</u>**

"Under 28 U.S.C. § 1961, the award of post judgment interest on a district court judgment is mandatory." <u>Barnard</u>, 721 F.3d at 1078. Here, Plaintiffs request a weekly interest of 0.354 percent. Dkt. No. 1050 at 25. Defendants do not oppose the post-judgment interest, thus it is approved.

**4. <u>Conclusion as to Attorneys' Fees</u>**

The lodestar calculation amounted to $1,682,345.14. However, given the results obtained at Plaintiffs' trial, the lodestar figure should be adjusted downward. Accordingly, considering the relatedness of the successful and unsuccessful claims, Plaintiffs' level of success, and the nonmonetary benefits obtained, a reasonable attorneys' fee is $471,056.64. Additionally, Plaintiffs shall be awarded post-judgment interest.

**B. Plaintiffs' Request for Litigation Costs**

Plaintiffs seek $101,028 in litigation costs on behalf of the Bustamante Firm. Dkt. No. 1044 at 1. Defendants oppose this request on the grounds that Mr. Padgett is not a "prevailing

party" under Federal Rule of Civil Procedure 54(d)(1) because he did not prevail on a substantial part of the litigation, or in the alternative, if both Mr. Padgett and Defendants are considered "prevailing" parties, then each party should bear their own costs. Dkt. No. 1065 at 7-8.

Pursuant to Rule 54(d)(1), costs should be allowed to the prevailing party. A party is a "prevailing party" if it "achieved a material alteration in the legal relationship of the parties that is judicially sanctioned." Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1078 (9th Cir. 2015). To prevail, however, a party need not succeed in all of its claims. Id.

Here, Mr. Padgett is a prevailing party since he was successful on one of his claims. Thus, he is entitled to litigation costs. In examining the bill of costs, $1,028 will be deducted for excessive costs related to court searches, subpoenas, photocopying, and purchase of office supplies. Dkt. No. 1044. Therefore, $100,000 in litigation costs is reasonable.

**C. Defendants' Request for Litigation Costs**

Defendants seek $291,540.69 in litigation costs as prevailing parties in the unsuccessful claims. Dkt. No. 1041 at 1.

The Ninth Circuit has set forth several factors to justify the denial of an award of costs to a prevailing party: "the losing party's limited financial resources; misconduct on the part of the prevailing party; the importance of the issues; the importance and complexity of the issues; the merit of the plaintiff's case, even if the plaintiff loses; and the chilling effect on future civil rights litigants of imposing high costs." Save Our Valley v. Sound Transit, 335 F.3d 932, 945 (9th Cir. 2003) (internal citations omitted). Plaintiff contends that these factors weight against awarding Defendants litigation costs. Dkt. No. 1070 at 2. This Court agrees.

First, as to Defendants' misconduct, the record does show some misconduct on their part. Judge Ware previously found that the City and Loventhal failed to take adequate precautions to preserve Loventhal's computer equipment for forensic analysis, and Loventhal's conduct constituted the kind of "fault" sufficient to warrant sanctions. Dkt. No. 312 at 5. The Court

further found that Plaintiffs had suffered some prejudice as a result of the evidence spoliation, including the additional expense and delay associated with getting their expert ready for inspection and in filing a motion for sanctions. Id. at 6. The court proceeded to imposing sanctions against Defendants, including reimbursing Plaintiffs all costs associated to the filing of Defendants' motion and subsequent supplemental briefings, paying the cost of Plaintiffs' expert, and bearing the cost of the Special Master that the Court put in place to manage the discovery process. Id. at 6-7. Furthermore, Judge Ware found Wright's appeal of the order denying qualified immunity to be frivolous because the district court had found that Plaintiffs' evidence created triable issues of fact, and a ruling on qualified immunity was inappropriate due to incomplete discovery. Dkt. No. 539 at 3. Given Judge Ware's ruling during litigation and the documents on the record, it appears that Defendants engaged in the type of misconduct that would render an award of costs inappropriate. Thus, this factor weighs against granting an award of costs.

Second, as to the importance and complexity of the issues, this case involved constitutional rights violations by the City Council and City officials, which advances important civil rights interests. Moreover, Plaintiffs were successful in bringing a colorable claim that survived summary judgment and prevailed at trial. While the issues litigated may not have been complex, it took many years of litigation in order to reach trial and, at one point, Plaintiffs advanced with litigation without counsel. The fact that Plaintiffs were able to overcome these obstacles and prevail at trial indicates that the basis for the lawsuit was credible even if only one claim resulted in a favorable jury verdict. Thus, these factors weigh against awarding costs.

Third, awarding costs to Defendants would have a chilling effect on future civil rights litigants. As Plaintiffs correctly point out, others who wish to bring colorable civil rights claims would be hesitant to do so, believing that they would be held liable for litigation costs even if they are successful with one claim. Thus, this factor weighs against awarding costs.

Given the reasons above, it would be inappropriate to award Defendants litigation costs.

United States District Court
Northern District of California

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees and Costs is GRANTED IN PART AND DENIED IN PART. Plaintiffs shall receive an attorneys' fee award of $471,056.64 plus post-judgment interest, and litigation costs for $100,000. Defendants' Motion for Costs is DENIED.

**IT IS SO ORDERED.**

Dated: March 31, 2015



EDWARD J. DAVILA
United States District Judge