UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH PADGETT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN LOVENTHAL, et al.,<br><br>Defendants. | Case No. 5:04-cv-03946-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br><br>Re: Dkt. No. 1150 |

Plaintiff Joseph Padgett ("Plaintiff") seeks an award for attorney's fees under 42 U.S.C. § 1988, litigation costs under Federal Rule of Civil Procedure 54(d)(1), and post-judgment interest under U.S.C. § 1961(a). Dkt. No. 1150 ("Mot."). For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

**I. BACKGROUND**

This 2004 action litigated by Mr. Padgett against employees of the City of Monte Sereno stemmed from the initial act of Mr. and Mrs. Padgett erecting a fence on their property that they knew was too high and against the City ordinance. Over the years, substantial fees were incurred litigating disputes about the fence, which was ultimately lowered by removing an ornamental trellis.

In 2009, this action went to trial. The Padgett's brought seven § 1983 claims against Defendants Brian Loventhal, City Manager; and Curtis Wright, Mayor and City Councilman. The jury returned one verdict in favor of Defendant Wright as to Mrs. Padgett's First Amendment claim and one verdict in favor of Mr. Padgett on his First Amendment claim against Defendant Wright. The jury was unable to reach a verdict on the remaining claims. Dkt. No. 934 at 2. The jury ultimately awarded Plaintiff $1 in nominal damages and $200,000 in punitive damages, which the court reduced to $10,000. The parties subsequently moved for judgment as a matter of law. In

the end, Mr. Padgett prevailed on one claim against one Defendant, Mr. Wright, for retaliation under the First Amendment from Defendant Wright's circulation of an offensive letter about Mr. Padgett.

Plaintiff filed his first motion for attorney's fees in 2010, which sought $3.2 million: $810,777 for pretrial services performed by the McManis Faulkner law firm and $2,199,388.48 for pretrial and trial work performed by Jeff Kallis and Bustamante & Gagliasso. Dkt. No. 995. Plaintiff also requested costs in the amount of $900,000. The court ultimately awarded Plaintiff $500,000 for attorney's fees and $100,000 for costs. Dkt. No. 995 at 8. Judge Ware noted in his order, "[t]his is a textbook example of disproportionate litigation in relation to the actual damages. In the end, Defendant Wright was ordered to pay Plaintiff $600,000 within 60 days, Defendant Wright appealed this order. Dkt. No. 995 at 16.

In 2013, the Ninth Circuit vacated and remanded the attorney's fees award requiring the district court to provide an explanation of the fees. Dkt. No. 1023; *Padgett v. Loventhal*, 706 F.3d 1205, 1208 (9th Cir. 2013). Each party was to bear its own cost of the appeal. *Id*. at 9. Parties re-briefed motions to assist the court in ascertaining the fees.

In 2015, this court, after applying the lodestar method, approved Plaintiff's attorney's fees request for the services provided by Kallis & Associates, P.C. and Bustamente & Gagliasso, P.C. finding their rates and hours to be reasonable. Dkt. No. 1087. Plaintiff requested $1,779,953.99 for the Bustamante Firm and the Kallis Firm. Dkt. No. 1050 at 15. The court applied the lodestar method and determined that a reasonable amount of attorney's fees totaled $1,682,345.14. In determining reasonableness, the court considered that Plaintiff succeeded on one claim, which resulted in $1 in nominal damages and $10,000 in punitive damages. The court thereby adjusted the final amount in proportion with Plaintiff's success. Thus, it was determined that because two of Plaintiff's seven claims survived summary judgment and were tried, it could be said that Plaintiff was successful on two-sevenths of his claims. The result of which included an award of $471,056.64 in attorney's fees—two-sevenths of the original lodestar amount. Dkt. No. 1087 at

Case No.: 5:04-cv-03946-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

2

10. The order also awarded Plaintiff post-judgment interest of 0.354 percent and $100,000 in litigation costs. *Id*. at 11, 14. Plaintiff appealed. Dkt. No. 1090.

Plaintiff omitted the McManis Faulker services and fees in his briefing and these fees were therefore not considered and any claim for them dismissed. In 2018, the Ninth Circuit reversed this court's dismissal of Plaintiff's claims for fees because a "clear warning" was not given that dismissal would result from Plaintiff's failure to file the required documents by this court's deadline. Dkt. No. 1124 at 4–5.

Plaintiff has submitted documents for McManis's services and now presently before the court, is Plaintiff's final post-trial motion for an award of attorney's fees for the pretrial services of McManis Faulkner and post-trial services by Plaintiff's current counsel, Mr. Hugo Torbit. Plaintiff seeks $689,332.50 for the legal services of McManis Faulkner from the period of September 2004 to September 2006. Plaintiff seeks $30,250.00 for legal services provided by Mr. Hugo Torbit since April 2015. In addition, Plaintiff seeks $14,719.90 in costs. Lastly, Plaintiff seeks interest applied to the whole of the judgment. The court discusses each in turn.

## II. LEGAL STANDARDS

"Generally, litigants in the United States pay their own attorneys' fees, regardless of the outcome of the proceedings." *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). "However, in order to encourage private enforcement of the law[,] Congress has legislated that in certain cases prevailing parties may recover their attorneys' fees from the opposing side. When a statute provides for such fees, it is termed a 'fee shifting' statute." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

"District courts must calculate awards for attorneys' fees using the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id*. "Although in most cases, the lodestar figure is

presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Id*.

**III. DISCUSSION**

**A. Whether Plaintiff is Entitled to Attorney's Fees Under 42 U.S.C. § 1988**

Plaintiff alleges that he is entitled to attorney's fees under 42 U.S.C. § 1988 (proceedings in vindication of civil rights) for the pre-trial legal services rendered by McManis Faulkner from September 2004 to September 2006, in the amount of $689,332.50, and $30,250 for the post-trial legal services provided by Mr. Torbit from April 2015 to present. Mot. at 5. Section 1988 provides that in § 1983 actions "the court, in its discretion, may allow the prevailing party" . . . "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Pursuant to 42 U.S.C. § 1988, "[a] party who prevails on a claim under § 1983 is entitled to reasonable attorneys' fees unless special circumstances would render such an award unjust." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014). Congress passed the statute "to attract competent counsel to prosecute civil rights cases," thus "fee awards should be the rule rather than the exception." *Barnard v. Theobald*, 721 F.3d 1069, 1077 (9th Cir. 2013).

**1. McManis Faulkner pre-trial services**

Here, both requirements under the § 1988 provision are met for McManis' pretrial services. Plaintiff went to trial asserting § 1983 claims against Defendants employed by the City of Monte Sereno and prevailed on at least one claim. Thus, Plaintiff is entitled to attorney's fees on his prevailing claim.

Having found that fees can be awarded, the court now considers the amount of award. In determining the reasonableness of the fees, the district court has discretion. *Chaudhry*, 751 F.3d at 1110. In the context of civil rights litigation, "the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The district court, however, must provide a clear and concise explanation of its reasons for the fee award. *Chaudhry*,

751 F.3d at 1110.

In calculating the reasonableness of the McManis fees, "the court must start by calculating the lodestar amount, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Chaudhry*, 751 F.3d at 1110 (internal quotations omitted). The burden is on the moving party to prove the reasonableness of the hours. *Camacho*, 523 F.3d at 980. Here, Plaintiff contends 2,241 hours were expended by McManis Faulkner at an average rate of $307.60 per hour over the span of two years, minus reductions, which results in a lodestar calculation of $689,332.50. Dkt. No. 1150 at 11.

### i. Rate

"Fee applicants have the burden of producing evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Chaudhry*, 751 F.3d at 1110 (internal quotations omitted). The relevant community is the district court's forum, and affidavits regarding prevailing fees are satisfactory evidence of the prevailing market rate. *Id*. "Once a fee applicant presents such evidence, the opposing party has a burden of rebuttal that requires submission of evidence challenging the accuracy and reasonableness of the facts asserted by the prevailing party in its submitted affidavits." *Id*. at 1110–11 (internal quotations omitted).

The relevant community for this motion is the Northern District of California. A reasonable hourly rate for civil rights attorneys in this community is up to $700 for partners, up to $350 for associates, up to $200 for paralegals and law clerks. *See e.g.*, *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1099–1103 (N.D. Cal. 2010); *Californians for Disability Rights v. Cal. Dep't of Transp.*, 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010) (James, J.); *Simon v. Toshiba Am.*, 2010 WL 1757956, at *4 (N.D. Cal. Apr. 30, 2010) (Patel, J.).

Here, the court finds that the fees of the McManis Faulkner law firm are in line with community rates. Defendant objects to Plaintiff's proffered monthly billing statements as evidence for his fees. Dkt. No. 1153 at 11. Defendant further argues that Plaintiff's declarations

Case No.: 5:04-cv-03946-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

5

are "self-serving" and argues affidavits by the attorney himself are required. Dkt. No. 1153 at 22–23 citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Even still, while "declarations filed by the fee applicant do not conclusively establish the prevailing market rate[,] '[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits.'" *Camacho*, 523 F.3d at 980 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)). Defendant does not provide any such evidence.

The court finds the reasonableness of McManis' rates can be found within the billing statements the McManis firm provided to Plaintiff without specific attorney declaration. Plaintiff's declaration states that he hired McManis to represent him in his case. Decl. Padgett at 1. Plaintiff also identifies the main attorneys that worked on his case and their rates. For example, Plaintiff's lead lawyer was James McManis; however, most of the legal work was performed by Michael Reedy and Christine Peek. Decl. Padgett at 1. Mr. McManis billed at the rate of $600.00 per hour. *Id*. Mr. Reedy billed at the rate of $375.00 per hour and as years passed his rates went up to $425.00 per hour. *Id*. Ms. Peek initially billed at $125.00 an hour but her rate increased over time to $250.00 an hour. *Id*. Other partners involved sporadically billed at between $400.00–$475.00. *Id*. The names mentioned coincide with the initials throughout the billing statements for each entry along with their rate and final charges. *See* Dkt. No. 1151 at Exs. A-1, B-1, and C-1. Billing statements by the firm are clearly labeled with firm name and contact details. Defendant fails to meet his burden in submitting evidence that challenges the accuracy and reasonableness of McManis' rates. Defendant also fails to provide any authority to support that Plaintiff cannot authenticate his own bills. The McManis Faulker firm is a local firm that charges rates comparable to those practicing in the Northern District of California. Plaintiff has knowledge of who his own attorneys were and how much he was charged for the work on his behalf. The court finds the rates of the McManis firm to be reasonable and next addresses whether

Case No.: 5:04-cv-03946-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

6

the total amount calculated is reasonable.

### ii. Reasonableness

Plaintiff alleges the proposed lodestar amount with his deductions is reasonable. Dkt. No. 1150 at 13. Defendant disagrees by arguing much of the work claimed is duplicative of the work from Kallis and Bustamante who were already awarded attorney's fees. Dkt. No. 1153 at 8–9. Generally, "the district court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry*, 751 F.3d at 1111. The number of hours can be reduced for duplicative or unnecessary work, and the district court can impose up to a ten percent reduction without explanation. *Id*. "However, where the disparity is larger, a more specific articulation of the court's reasoning is expected." *Id*. (internal quotations omitted). In addition, time spent on unsuccessful or unrelated claims may be excluded from the lodestar calculation. *Traditional Cat Association v. Gilbreath*, 340 F.3d 829, 832–34 (9th Cir. 2003).

Defendant also contends that the main focus of the litigation was toward a different defendant and therefore the fees and costs associated with that should not be placed on him. Dkt. No. 1153 at 12. This court has already found the unsuccessful claims and successful claims as related. Dkt. No. 1087 at 10. As mentioned, only Plaintiff prevailed at trial. With that; however, Plaintiff only nominally prevailed on one claim against one Defendant. Because of this, it would be unreasonable to award $687,332.50 in attorney's fees, even with Plaintiff's deductions, for trial preparation on all claims against all defendants.

In determining reasonableness, the court looks to both what the billing statements reflect and how attorney's fees awards were calculated in this action previously. Here, the billing statements provided to Plaintiff from the McManis law firm provide itemized charges with descriptions of work provided. Each entry shows the date, subject, the initials of the attorney, the time allotted, the hourly fee for that attorney, and a final charge. Upon examination, the billing includes a wide range of pre-trial activities that include work towards all claims against all Defendants. Plaintiff ultimately only prevailed on one claim against one defendant. For example,

Case No.: 5:04-cv-03946-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

7

there are entries charging $160 per phone call with Mrs. Padgett who was original party to the case but did not prevail on any claims. Padgett Decl. Ex. A-1 at 19. Plaintiff was charged for multiple conversations between attorneys and forensic analysist over palm prints, which are unrelated to the prevailing claim against Defendant Wright. Padgett Decl. Ex. A-1 at 25. In 2005, attorneys were preparing for a motion for physical examination—also unrelated to Defendant Wright. Dkt. No. 1151-2 at 3. On the other hand, Plaintiff has taken a hard pen and redacted many charges throughout—excising charges that were arguably excessive or duplicative. Dkt. No. 1152, Decl. Torbet ¶ 7. In seeking to make the time record "as lean as possible," Plaintiff removed charges such as, communications with the press, nearly all telephone calls between the firm and the clients, nearly all the charges for the members of the firm sending each other memos, and instances of double billing. *Id.* ¶ 8.

The court also finds it necessary to reduce a portion of the attorney's fees requested because of an agreement between Plaintiff and the McManis firm. Per that agreement, certain fees over a specific range of time were waived by McManis and therefore not paid by Plaintiff. In 2007, the Padgett's and the McManis law firm entered into an agreement whereby the Padgett's agreed with the firm waiving the outstanding legal services debt the Padgett's had incurred that were secured by multiple promissory notes. The court finds this range of fees that were not paid per the agreement as un-reimbursable. To determine the un-reimbursable range the court compares the dates of the promissory notes given to the McManis firm as security, against the universe of all McManis' billings Plaintiff submitted to the court. Based on the promissory notes provided, the debt covers services ranging from May 2005 through March 2006. Thus, the un-reimbursable range is from May 2005 through March 2006. After calculating the billing statements in this range, the result amounts to $560,701.[1] After establishing the un-reimbursable range, the court next determines the reimbursable range.

---

[1] The calculation is as follows: May 2005 = $29,695 (Dkt. No. 1152, Ex. B-2); June 2005 — December 2005 = $225,353 (Dkt. No. 1152, Ex. A-2); January 2006 — March 2006 = $305,653 (Dkt. No. 1152, Ex. A-2). Thus, $29,695 + $225,353 + $305,653 = $560,701.

Case No.: 5:04-cv-03946-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

8

Plaintiff's services with McManis began in September 2004 and ended in September 2006. This is the complete universe of the attorney's fees request. The billings from September 2004 through the end of April 2005 (up until the un-reimbursable range begins) result in the amount of $56,184.[2] Plaintiff submitted billings for April and May of 2006 totaling $72,447 and no billings for the services rendered from June 2006 through September 2006. The final calculations result in an un-reimbursable amount of $560,701, which encompasses May 2005 through the end of March 2006. And the reimbursable billings, which encompasses September 2004 — end of April 2005 and April 2006 — May 2006 totaling $128,631.

In sum, in taking into account the reasonable rate, the court finds a reasonable amount of reimbursable attorney's fees for Plaintiff's one prevailing claim in the amount of $128,631, which is the result of the total requested reimbursement for McManis services minus the unpaid amount Plaintiff unilaterally waived under the separate agreement with McManis.

### 2. Torbit post-trial services

As previously mentioned, litigants generally pay their own attorney's fees, regardless of the outcome of the proceedings unless there is a statute providing for such fees, as is the case here. "In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659–60 (9th Cir. 1985). Attorneys should be compensated for reasonable time spent in establishing their rightful claim to the fee. *Id*. at 660; *Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 695 (9th Cir. 1991). However, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). This is Plaintiff's second request for McManis attorney's fees. *See* Dkt. No. 951. Plaintiff's final judgment came in 2010 and Plaintiff has been litigating the attorney's fees ever since.

Mr. Torbet's rates are in line with the community. Here, Mr. Torbet's hourly rate is

---

[2] [September 2004 — March 2005 = $41,624 (Dkt. No. 1152, Ex. A-2)] + [April 2005 = $14,560 (Dkt. No. 1152, Ex. B-2)] = $56,184.

Case No.: 5:04-cv-03946-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

9

1 $375.00. Dkt. No. 1152, Decl. Torbet ¶ 12. Mr. Torbet states he has been a practicing attorney in the Bay Area for twenty-nine years. *Id*. His experience has covered federal civil rights cases and general business cases. *Id*. As established previously, this is a reasonable rate within this area.

Mr. Torbet's hours spent on the litigation tip toward unreasonable. Mr. Torbet's services are broken down into two categories: the work provided for Plaintiff's appeal and the work provided for this motion. Mr. Torbet states that he worked twenty-nine hours on Plaintiff's appeal from this court's order in 2015. *Id*. ¶ 11; *See* Dkt. No. 1087. Mr. Torbet had also agreed to a flat rate of $10,000. *Id*. ¶ 13. Mr. Torbet also charged Plaintiff for an estimated twenty-five hours for the motion for attorney's fees. Mr. Torbet provides a billing statement for the appeal services but simply estimates the time needed for the attorney's fees motion without providing any billing. Decl. Torbet, Ex. E.

The court finds that the requested amount of $30,250.00 to be substantial fees-on-fees when reviewing the time and type of work provided. First, the underlying reason why this action processed through an appeal and back was premised on the fact that Plaintiff failed to submit the required documentation of the McManis fees back in 2015. Thus, it would not be fair to charge Defendant Wright for the attorney's fees incurred because of Plaintiff's own error.

Second, much of the motion for attorney's fees consisted of refiling billing statements of McManis that were previously filed to the court on the first round in 2010. The court acknowledges the time spent in redacting costs deemed excessive or duplicative and the subsequent math; however, this can hardly amount to twenty-five hours' or $9,375 worth of work. Lastly, Mr. Torbet does not provide a billing statement for his time spent preparing the motion.

Thus, for the reasons stated above, taking from the initial request of $30,250, the court will subtract some of the hours spent on motion for attorney's fees given no billing statement was provided explaining the work done, but does leave payment for some of the hours worked for researching and writing the motion. The court also reduces the hours spent on the appeal given Plaintiff was successful on half of his claim. In total, Mr. Torbet is entitled to 20 hours for

Case No.: 5:04-cv-03946-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

10

services regarding the attorney's fees motion, and 15 hours for the appeal. This amounts to 35 hours of work multiplied by a reasonable rate of $375 per hour, plus the $10,000 flat rate fee for a final and new total of $23,125.

Accordingly, $23,125.00 in attorney's fees shall be awarded for the services of Mr. Torbit.

### B. Whether Plaintiff is Entitled to Costs Under Federal Rule of Civil Procedure 54(d)(1)

Plaintiff also seeks an award of costs authorized under Federal Rule of Civil Procedure 54(d)(1) in the amount of $14,719.90. Mot. at 6, 18–19. The judgment and costs section in the federal rules of procedure provide that "costs—other than attorney's fees—should be allowed to the prevailing party" unless a federal statute or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1). Here, Plaintiff has prevailed on one claim.

Rule 54(d)(1) "creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-American Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000). However, a district court's "discretion is not unlimited. A district court must 'specify reasons' for its refusal to award costs." *Id*. (quoting *Subscription Television, Inc. v. So. Cal. Theatre Owners Ass'n*, 576 F.2d 230, 234 (9th Cir. 1978)).

Plaintiff requests $14,719.90 in total costs for the following:
1. Reporting services related to the special master proceedings in the amount of $2,569.81 (Dkt. No. 1151, Ex. D-2);
2. Depositions transcripts taken amounting to $9,569.05 (Dkt. No. 1151, Ex. D-3);
3. Witness fees paid for police testimony in the amount of $1,231.48 (Dkt. No. 1151, Ex. D-4); and
4. Service of process in the amount of $1,349.50 (Dkt. No. 1151, Ex. D-5).

On costs relating to the reporting services, one receipt in the amount of $264.10 is billed to the firm Bustamante to which the attorney's fees are not presently before the court. Dkt. No. 1151-5 at 10. Thus, the court subtracts the $264.10 from the requested amount of $2,569.87, leaving a final amount of $2,305.77 under the reporting services request.

Defendant objects to payment for all depositions taken minus the deposition of himself.

Case No.: 5:04-cv-03946-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

11

The court agrees that Plaintiff does not provide a sufficient showing as to how the list of witnesses, other than Defendant Wright, relate to his one prevailing claim. Thus, the court finds $1,222.95 for a deposition taken of Defendant Wright as a reasonable amount.

Defendant objects to witness fees paid to Los Gatos/Monte Sereno chief of Police Scott Seaman and Captain Dave Gravel because their testimony was not necessary to Plaintiff's claim against Defendant Wright. Dkt. No. 1153 at 20. Defendant contends that he admitted to delivering a copy of a public newspaper article concerning Plaintiff to Ron Schindler and to a newspaper reporter. *Id*. Because Plaintiff does not otherwise explain how these witnesses directly supported him in his prevailing claim, the court finds it unreasonable to award these fees.

Defendant also objects to Plaintiff's request for service of process fees for numerous reasons. Dkt. No. 1153 at 20–21. For example, Defendants argue that many of the costs Plaintiff seeks to recover are for service of witnesses in another lawsuit filed in Santa Clara County Superior Court totaling $107.50. *Id*. Another example is multiple attempts to serve Lisa Rice, a separate defendant in this action totaling $347.50, a subpoena for his own fingerprint at $75, and for service to various witnesses unrelated to the prevailing claim or Defendant totaling $300. *Id*. at 21. Thus, the court finds $519.50 a reasonable amount of service of process fees.

In sum, Plaintiff is entitled to costs in the amount of $4,048.22.

### C. Whether Plaintiff is Entitled to Interest on His Money Judgments Under 28 U.S.C. § 1961(a)

Lastly, Plaintiff requests that interest be included as authorized under 28 U.S.C. § 1961(a). Mot. at 6. The statute provides for interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961 (emphasis added). Further, that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield." *Id*. "The purpose of awarding interest to a party recovering a money judgment is . . . to compensate the wronged person for being deprived of the monetary value of the loss . . . ." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288 (1995) (citations omitted). A money judgment includes attorney's fees. *See Perkins v. Standard*

Case No.: 5:04-cv-03946-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

12

1  *Oil Co.*, 487 F.2d 672, 675 (9th Cir.1973).

Here, Plaintiff was awarded a final money judgment in the amount of $1 in nominal damages and $10,000 in punitive damages in a civil case tried in a district court. Judgment was entered on February 4, 2010, when the court ruled on post-trial motions. Dkt. No. 934. The relevant calendar dates for the week preceding the judgment are January 25, 2010 to January 29, 2010. Plaintiff notes the rate for that week was .31%. Dkt. No. 1150 at 17; Dkt. No. 1152-9, Ex. F. Defendant does not oppose the .31% rate. Dkt. No. 1153 at 21. Thus, Plaintiff is entitled to interest on the monetary judgments awarded on this motion at an interest rate of .31%.

## IV. CONCLUSION AND ORDER

Plaintiff shall be awarded attorney's fees for the pre-trial services by the McManis Faulkner law firm in the amount of $128,631.00 and for the post-trial services of Mr. Torbit, an amount of $23,125.00. Plaintiff's total award of attorney's fees is $148,756.00. Plaintiff is entitled to litigation costs in the amount of $4,048.22. Lastly, Plaintiff is entitled to interest on the money judgments noted above at a .31% interest rate.[3]

**IT IS SO ORDERED.**

Dated: June 14, 2019

EDWARD J. DAVILA
United States District Judge

---

[3] Defendant's request for judicial notice (Dkt. No. 1155) of items numbered 1–39 is denied. All documents have been previously filed with the court.

Case No.: 5:04-cv-03946-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

13